**IMC MARITIME GROUP, INC. and Gulfcoast Transit Co., Petitioners–Appellees,**

v.

**RUSSIAN FARM COMMUNITY PROJECT, Respondent– Appellant.**

Nos. 05–0744, 05–0745.

United States Court of Appeals, Second Circuit.

Feb. 16, 2006.

Peter Skoufalos, Brown Gavalas & Fromm, LLP, New York, New York, Timothy B. Shea, Nemirow Hu & Shea, Washington, DC, for Appellant.

Peter A. Junge, Junge & Mele, LLP., New York, New York, for Appellees.

PRESENT: Hon. DENNIS JACOBS, Hon. SONIA SOTOMAYOR, Circuit Judges, and Hon. CHARLES L. BRIEANT, District Judge.*

## SUMMARY ORDER

Respondent–Appellant Russian Farm Community Project ("RFCP" or "Charterer") appeals from a Judgment of the United States District Court for the Southern District of New York (Berman, J.), entered in favor of Petitioners–Appellees ("Owners") IMC Maritime Group ("IMC") and Gulfcoast Transit Co. ("Gulfcoast") on January 10, 2005, granting Appellees' petitions to confirm separate arbitral awards, denying Appellant's petition to vacate those awards, and awarding Appellees both pre-

---

* The Honorable Charles L. Brieant, United States District Judge for the Southern District of New York, sitting by designation.

Judgment and post-Judgment interest. The arbitrations were held in New York.

The District Court properly found the following facts. In October 2001, RFCP chartered the vessel *Judy Latricko,* owned by Gulf Coast, and the *Adventure I,* owned by IMC Maritime, to carry bulk cargos of farm products from the United States to St. Petersburg, Russia. The Petitioners initiated two arbitration proceedings under the customary arbitration provisions contained in the Charters for arbitration in New York, subject to the rules of the Society of Maritime Arbitrators, Inc. ("SMA"). Although a single panel of SMA Arbitrators was convened to hear evidence with respect to these arbitrations, the hearings convened were held concurrently and were not consolidated. Owners sought payment of unpaid demurrage (detention) accrued at the discharge port. At the arbitration, IMC claimed that it had tendered Notice of Readiness to Discharge ("NOR") properly on January 15, 2002, thus triggering the running of lay time. Gulf Coast claimed that it had tendered its NOR on January 14, 2002, triggering the running of lay time. Both Petitioners claimed that the primary cause of the delay in discharge was a shortage of railway wagons, and not bad weather, as asserted in defense by the Charterer.

In support of their claims, Petitioners produced at the arbitrations, among other things: contemporaneous accounts of the Master, and Owners Port Superintendent, who had attended the cargo discharge and frequently complained about the unavailability and condition of railcars used at the port; weather information obtained through the United States Department of Commerce National Climatic Data Center, setting forth the amount of precipitation during the relevant periods; the vessels' contemporaneous log book entries, and those from two other unrelated vessels that were in the same port at the same time. The Respondent argued that bad weather had caused the discharge delays, and relied upon information collected and disseminated by the Russian Federal Agency for Environmental and Hydrometeorlogical Monitoring. The *Adventure I* log showed a total of 40 hours and 43 minutes of rain while the vessel was at St. Petersburg compared with the Charterer's figure of 549 hours and 5 minutes of rain. The *Judy Latricko's* log showed a total of 38.9 hours of rain compared to the Charterer's figure of 328 hours of rain.

These differences are material because under Article XVII of the Charters, days lost due to weather are not counted against lay time, although delays caused by the shore workforce or stevedores are risks borne by the Charterer. The Arbitration Panel heard evidence from three witnesses over three days of hearings and reviewed documentary evidence as well as post-hearing briefs. The Panel issued awards separately on April 14, 2004, and found that bad weather had not been the principal cause of the delays, and that no justification existed to apply lay time deductions on the basis of the existing record. The Panel found further that the unavailability of railway wagons, rather than bad weather, had caused the delays in discharge. The Panel awarded Gulf Coast $103,662.43 and awarded IMC $111,242.65. The Panel also awarded each Petitioner four percent (4%) interest per year on the principal until the award had been reduced to judgment or paid in full, whichever occurred first, and set its own fees at $46,882.00, assessed seventy percent (70%) against the Charterer and thirty percent (30%) against the Owner, with interest at four percent (4%) per year, to accrue from the award date until final payment had been received.

Petitions to confirm the arbitration awards were filed in the District Court on April 26, 2004. The Court consolidated the cases on June 28, 2004 and Respondent moved to vacate the awards. On December 14, 2004, the Court issued a written decision granting the Petitioners' Petitions to Confirm the arbitration awards based on the record before it, without an evidentiary hearing, and denying the Respondent's Petition to Vacate the Arbitration Awards. The District Court awarded both pre and post Judgment interest.

RFCP seeks Appellate review of one legal issue, which is whether the Arbitration Panel's finding that RFCP had not disproved the validity of vessel weather logs "conclusively" constituted a manifest disregard of the law by the Panel.

The District Court's decision confirming an arbitration award is reviewed under a *de novo* standard of review. *GMS Group, LLC v. Benderson*, 326 F.3d 75, 77 (2d Cir.2003).

In addition to the statutory grounds for vacatur of an arbitrary award contained within the Federal Arbitration Act, this Court has recognized that an arbitration award may be vacated for an arbitration panel's manifest disregard of the law. Manifest disregard of the law means more than mere misinterpretation of the law. The moving party must show that the law was clear, that the law was improperly applied in the decision, and that the Arbitrators knew of the law. *See Duferco Int'l Steel v. T. Klaveness Shipping, A/S*, 333 F.3d 383, 389–90 (2d Cir.2003). The term "disregard" implies that the Arbitrator appreciated the existence of a clearly governing legal principle but decided to ignore it. *See Merrill Lynch, Pierce, Fenner and Smith, Inc. v. Bobker*, 808 F.2d 930, 933 (2d Cir.1986). In order to vacate an arbitral award for manifest disregard of the law, the error must have been obvious and capable of being readily and instantly perceived by the average person qualified to serve as an Arbitrator.

Appellant's claim is based on the same paragraph in both of the Arbitration Awards, in which the Panels held that "[t]he most realistic proof for the weather conditions and the effect upon the cargo operations is the contemporaneous entries in vessels' logs, work reports for the port, other vessels discharging the same cargo and the vessel's stevedoring records. With the presence of the [*Adventure I* and the *Judy Latricko* ] logs, the burden is upon Charterer to disprove Owner's assertions conclusively." *See A–46; see also A–84.*

The District Court concluded, from the totality of the arbitral opinions, that the Arbitration Panel had nevertheless applied a preponderance of the evidence standard, and had not applied a more stringent "conclusive" standard, as argued by the Respondent. It was appropriate for the District Court to consider the entire record, and on that basis, the District Court properly rejected Appellant's manifest disregard of the law contention. In both arbitral awards, the Arbitration Panel held as follows:

Considering the total available information on the prevailing weather conditions, we are not persuaded that the vessel logs were incorrect or prejudicial. The panel has considered Charterer's general data obtained from the Russian Federal Agency for Environmental and Hydrometeorlogical Monitoring and compared it to vessel logs, the Master's testimony as well as that of the Port Captain, the actual working periods and the information provided by the U.S.

Department of Commerce National Climatic Data Center. We do not find that the cumulative effect of these submissions establish that the vessel's observations should be ignored. Therefore, the Panel accepts the vessel's logs as *prima facie* evidence of the prevailing weather conditions."

*See A–47.*

The decision holds further that "[t]he Panel's decision is further supported by Owner's Port Superintendent, who testified during these proceedings and the corroborating statements from the *Judy Latricko* as to the overlapping periods." *See id.* The Arbitrators also cited occasions where the vessel had actually discharged cargo during periods which the Charterer had excluded as bad weather, and stated that if a vessel works in what could possibly be considered excepted periods, the Charterer is not entitled to a suspension of the running of lay time for those periods.

■ Appellant argues that the Arbitration Panel refused to consider wholly reliable weather data even during periods in which the *Judy Latricko* and the *Adventure I* were at anchor and therefore maintained little or no independent weather data of their own. This assertion is contrary to the record, which demonstrates that the Arbitration Panel did not disregard the independent weather data, but instead considered this weather data and found it less persuasive than the vessel logs and other available information.

Appellant argues next that the Panel imposed an insurmountable burden of producing conclusive evidence, declaring that RFCP would have had to produce ships' logs of weather delays from a vessel discharging the same commodity at the same port at the very same time. Appellant

also claims that it offered evidence that would satisfy such a requirement in the form of proof that the vessel *Akmala* had discharged corn from January 11th to February 4th of that year at the same port. Appellant claims that the weather conditions recorded in the *Akmala's* log book completely coincided with the data collected by the Weather Service of the Port, which is the official Russian weather data. Considering the inadequacies found in Appellant's data, the Arbitrators were not wrong to discredit it.

■ The Panel's decision was not distorted by use of a wrong legal standard, as argued by the Appellant, but was reasonable and founded upon the totality of the record presented by the parties during the course of the arbitration. The Panel's use of the term "conclusively" was merely an inartistic use of that word. Indeed, few things can ever be proved conclusively. In this case, the use of the word is not conclusive of the actual standard of proof (preponderance of the evidence) by which the evidence was properly evaluated. On this record, the Arbitrators were not necessarily wrong. In any event, the awards do not show a manifest disregard of the law.

For the foregoing reasons, the judgment of the district court is AFFIRMED.