06-3474-cv
Stolt-Nielsen SA v. AnimalFeeds Int'l Corp.

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2007

(Argued: May 30, 2008          Decided: November 4, 2008)

Docket No. 06-3474-cv

-------------------------------------

STOLT-NIELSEN SA,
Stolt-Nielsen Transportation Group Ltd.,a
Odfjell ASA, Odfjell Seachem AS, Odfjell USA, Inc.,
Jo Tankers BV, Jo Tankers, Inc., and Tokyo Marine Co. Ltd.,

Petitioners-Appellees,

- v -

ANIMALFEEDS INTERNATIONAL CORP.,

Respondent-Appellant,

KP Chemical Corp.,

Respondent.[*]

-----------------------------------

Before:   KEARSE, SACK, and LIVINGSTON, Circuit Judges.

Appeal from an order and judgment of the United States District Court for the Southern District of New York (Jed S. Rakoff, Judge) vacating an arbitration award.  We conclude that the arbitration panel, in construing an arbitration clause in an international maritime agreement to permit class arbitration when

---

[*] The Clerk of Court is directed to amend the official caption as set forth above.

the clause was silent on that issue, did not manifestly disregard the law.

Reversed and remanded with instructions to deny the petition to vacate.

STEVEN F. CHERRY, Wilmer Cutler Pickering Hale and Dorr LLP (William J. Kolasky, Leon B. Greenfield, and David F. Olsky, Wilmer Cutler Pickering Hale and Dorr LLP, Washington, DC, of counsel), McLean, VA, for Petitioners-Appellees Odfjell ASA, Odfjell Seachem AS, and Odfjell USA, Inc.

CHRISTOPHER CURRAN, White & Case LLP (Francis A. Vasquez, Jr., Peter J. Carney, Eric Grannon, Kristen McAhren, and Charles C. Moore, of counsel), Washington, DC, for Petitioners-Appellees Stolt-Nielsen SA and Stolt-Nielsen Transportation Group Ltd.

Richard J. Rappaport, Amy B. Manning, and Tammy L. Adkins, McGuireWoods LLP, Chicago, IL; and Richard J. Jarashow, McGuireWoods LLP, New York, NY, for Petitioners-Appellees Jo Tankers BV and Jo Tankers, Inc.

Keith S. Dubanevich, Garvey Schubert Barer, Portland, OR, for Petitioner-Appellee Tokyo Marine Co. Ltd.

BERNARD PERSKY, Labaton Sucharow LLP (Steven A. Kanner, Much Shelist Freed Denenberg Ament & Rubenstein, P.C., Chicago, IL; Michael D. Hausfeld, Cohen, Milstein, Hausfeld & Toll, P.L.L.C., Washington, DC; Solomon B. Cera, Gold Bennet Cera & Sidener LLP, San Francisco, CA; J. Douglas Richards, Milberg Weiss Bershad & Schulman LLP, New York, NY; W. Joseph Bruckner, Lockridge Grindal Nauen P.L.L.P., Minneapolis, MN; and Aaron F. Biber, Gray, Plant, Mooty, Mooty & Bennett, P.A., Minneapolis, MN, of counsel), New York, NY, for Respondent-Appellant.

2

SACK, Circuit Judge:

The parties to this litigation are also parties to international maritime contracts that contain arbitration clauses. The contracts are silent as to whether arbitration is permissible on behalf of a class of contracting parties. The question presented on this appeal is whether the arbitration panel, in issuing a clause construction award construing that silence to permit class arbitration, acted in manifest disregard of the law. The United States District Court for the Southern District of New York (Jed S. Rakoff, Judge) answered that question in the affirmative and therefore vacated the award. We conclude to the contrary that the demanding "manifest disregard" standard has not been met. The judgment of the district court is therefore reversed and the cause remanded with instructions to deny the petition to vacate.

**BACKGROUND**

Respondent-Appellant AnimalFeeds International Corp. ("AnimalFeeds") alleges that Petitioners-Appellees Stolt-Nielsen SA, Stolt-Nielsen Transportation Group Ltd., Odfjell ASA, Odfjell Seachem AS, Odfjell USA, Inc., Jo Tankers BV, Jo Tankers, Inc., and Tokyo Marine Co. Ltd. (collectively "Stolt-Nielsen") are engaged in a "global conspiracy to restrain competition in the world market for parcel tanker shipping services in violation of federal antitrust laws." Appellant's Br. 4. AnimalFeeds seeks to proceed on behalf of a class of "[a]ll direct purchasers of parcel tanker transportation services globally for bulk liquid

3

chemicals, edible oils, acids, and other specialty liquids from [Stolt-Nielsen] at any time during the period from August 1, 1998, to November 30, 2002." Claimants' Consolidated Demand for Class Arbitration, May 19, 2005, at 4.

AnimalFeeds initially filed suit in the United States District Court for the Eastern District of Pennsylvania on September 4, 2003. That action was transferred to the District of Connecticut pursuant to an order of the Judicial Panel on Multidistrict Litigation, see 28 U.S.C. § 1407 (2000), consolidating "actions shar[ing] factual questions relating to the existence, scope and effect of an alleged conspiracy to fix the price of international shipments of liquid chemicals in the United States," In re Parcel Tanker Shipping Servs. Antitrust Litig., 296 F. Supp. 2d 1370, 1371 (J.P.M.L. 2003). In the District of Connecticut, Stolt-Nielsen moved to compel arbitration. The district court denied the motion but we reversed, holding that the parties' transactions were governed by contracts with enforceable agreements to arbitrate and that the antitrust claims were arbitrable. JLM Indus., Inc. v. Stolt-Nielsen SA, 387 F.3d 163, 183 (2d Cir. 2004).[1]

The parties then entered into an agreement stating, among other things, that the arbitrators "shall follow and be

---

[1] AnimalFeeds was not a named party in JLM Industries, which reversed a decision that had been entered by the District of Connecticut prior to In re Parcel Tanker Shipping Services Antitrust Litigation's transfer and consolidation order. It is undisputed, however, that our decision in JLM Industries had the effect of requiring arbitration of AnimalFeeds's claims.

4

bound by Rules 3 through 7 of the American Arbitration Association's Supplementary Rules for Class Arbitrations (as effective Oct. 8, 2003)."  Agreement Regarding New York Arbitration Procedures for Putative Class Action Plaintiffs in Parcel Tanker Services Antitrust Matter ("Class Arbitration Agreement") 3.

Rule 3 provides:

> Upon appointment, the arbitrator shall determine as a threshold matter, in a reasoned, partial final award on the construction of the arbitration clause, whether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class (the "Clause Construction Award").  The arbitrator shall stay all proceedings following the issuance of the Clause Construction Award for a period of at least 30 days to permit any party to move a court of competent jurisdiction to confirm or to vacate the Clause Construction Award. . . .
>
> In construing the applicable arbitration clause, the arbitrator shall not consider the existence of these Supplementary Rules, or any other AAA rules, to be a factor either in favor of or against permitting the arbitration to proceed on a class basis.[2]

American Arbitration Ass'n, Supplementary Rules for Class Arbitrations (2003) ("Supplementary Rules"), available at http://www.adr.org/sp.asp?id=21936 (last visited October 17, 2008).  Pursuant to the Class Arbitration Agreement, AnimalFeeds,

---

[2]  The Supplementary Rules were issued following the Supreme Court's decision in Green Tree Financial Corp. v. Bazzle, 539 U.S. 444, 452-53 (2003), which held that when parties agree to arbitrate, the question of whether the agreement permits class arbitration is one of contract interpretation to be determined by the arbitrators, not by a court.

together with several co-plaintiffs not parties to this appeal, filed a demand for class arbitration. An arbitration panel was appointed to decide the Clause Construction Award.

The arbitration panel was required to consider the arbitration clauses in two standard-form agreements known as the Vegoilvoy charter party and the Asbatankvoy charter party.[3] The Vegoilvoy agreement, which governs all transactions between AnimalFeeds and Stolt-Nielsen relevant to this appeal, contains the following broadly worded arbitration clause:

> Any dispute arising from the making, performance or termination of this Charter Party shall be settled in New York, Owner and Charterer each appointing an arbitrator, who shall be a merchant, broker or individual experienced in the shipping business; the two thus chosen, if they cannot agree, shall nominate a third arbitrator who shall be an Admiralty lawyer. Such arbitration shall be conducted in conformity with the provisions and procedure of the United States Arbitration Act, and a judgment of the Court shall be entered upon any award made by said arbitrator. Nothing in this clause shall be deemed to waive Owner's right to lien on the cargo for freight, dead freight or demurrage.

The Asbatankvoy agreement, which governs some relevant transactions between Stolt-Nielsen and other putative class

---

[3] "A charter party is a specific contract, by which the owners of a vessel let the entire vessel, or some principal part thereof, to another person, to be used by the latter in transportation for his own account, either under their charge or his." Asoma Corp. v. SK Shipping Co., 467 F.3d 817, 823 (2d Cir. 2006) (citations and internal quotation marks omitted); see also 2 Thomas J. Schoenbaum, Admiralty & Maritime Law § 11-1, at 2 (4th ed. 2004) ("The charter party is . . . a specialized form of contract for the hire of an entire ship, specified by name." (footnote omitted)).

6

members not parties to this appeal, contains a similar broadly worded arbitration clause.[4]  Both agreements unambiguously mandate arbitration but are silent as to whether arbitration may proceed on behalf of a class.

The arbitration panel, tasked with deciding whether that silence permitted or precluded class arbitration, received evidence and briefing from both sides.  AnimalFeeds and its co-plaintiffs argued that because the arbitration clauses were silent, arbitration on behalf of a class could proceed.  They cited published clause construction awards under Rule 3 of the Supplementary Rules permitting class arbitration awards where the arbitration clause was silent.  They also argued that public policy favored class arbitration and that the contracts' arbitration clauses would be unconscionable and unenforceable if they forbade class arbitration.

Stolt-Nielsen's position was that because the arbitration clauses were silent, the parties intended not to permit class arbitration.  It cited several federal cases and arbitration decisions denying consolidation and class treatment of claims where the arbitration clause was silent.  Stolt-Nielsen also argued that arbitration decisions cited by AnimalFeeds were inapposite because they were not made in the context of international maritime agreements, where parties have no

---

[4]  The Asbatankvoy arbitration clause is reproduced in the district court's opinion. See Stolt-Nielsen SA v. Animalfeeds Int'l Corp., 435 F. Supp. 2d 382, 384 n.1 (S.D.N.Y. 2006).

expectation that arbitration will proceed on behalf of a class. In addition, Stolt-Nielsen offered extrinsic evidence regarding "the negotiating history and the context" of the arbitration agreements to "reinforce the conclusion that the parties did not intend . . . to authorize class arbitration." Respondents' Opposition to Claimants' Motion for Clause Construction Award Permitting Class Arbitration ("Stolt-Nielsen's Arbitration Br.") 16. At oral argument before the arbitration panel, Stolt-Nielsen acknowledged that the interpretation of the contracts at issue here was a question of first impression.

On December 20, 2005, the arbitration panel issued a Clause Construction Award deciding that the agreements permit class arbitration.[5] The panel based its decision largely on the fact that in all twenty-one published clause construction awards issued under Rule 3 of the Supplementary Rules, the arbitrators had interpreted silent arbitration clauses to permit class arbitration. The panel acknowledged that none of those cases was decided in the context of an international maritime contract. It said that it was nonetheless persuaded to follow those clause construction awards because the contract language in the cited cases was similar to the language used in the charter parties, the arbitrators in those cases had rejected contract-interpretation arguments similar to the ones made by

---

[5] The panel did not certify a class or otherwise decide whether the arbitration would actually proceed as a class action. The panel's decision was limited to deciding a question of contract interpretation: whether the arbitration agreements permit class arbitration.

Stolt-Nielsen in this case, and Stolt-Nielsen had been unable to cite any arbitration decision under Rule 3 in which contractual silence had been construed to prohibit class arbitration.

In addition, the panel distinguished Second Circuit case law prohibiting consolidation of claims when an arbitration agreement is silent, see, e.g., United Kingdom v. Boeing Co., 998 F.2d 68, 74 (2d Cir. 1993), reasoning that "consolidation of two distinct arbitrations under two distinct arbitration clauses raises a different situation from a class action." Clause Construction Award 6.

Lastly, the panel acknowledged that the arbitration clauses under consideration "are part of a long tradition of maritime arbitration peculiar to the international shipping industry." Id. It concluded nonetheless that Stolt-Nielsen's arguments regarding the negotiating history and context of the agreements did not establish that the parties intended to preclude class arbitration.

Stolt-Nielsen petitioned the district court to vacate the Clause Construction Award. The court granted the petition, concluding that the award was made in manifest disregard of the law. Stolt-Nielsen SA v. Animalfeeds Int'l Corp., 435 F. Supp. 2d 382, 387 (S.D.N.Y. 2006). According to the district court, the arbitrators "failed to make any meaningful choice-of-law analysis." Id. at 385. They therefore failed to recognize that the dispute was governed by federal maritime law, that federal maritime law requires that the interpretation of charter parties

9

be dictated by custom and usage, and that Stolt-Nielsen had demonstrated that maritime arbitration clauses are never subject to class arbitration.  Id. at 385-86.  Even under state law, the district court said, the panel was required to interpret contracts in light of industry custom and practice.  Id. at 386.  Because these clearly established rules of law were presented to the panel and the panel failed to apply them, the district court held, the Clause Construction Award must be, and was, vacated.  Id. at 387.

AnimalFeeds appeals.

**DISCUSSION**

I.   Standard of Review

We review de novo a district court's order vacating an arbitration award for manifest disregard of the law.  Hoeft v. MVL Group, Inc., 343 F.3d 57, 69 (2d Cir. 2003).

II.  Grounds for Vacating an Arbitration Award

"It is well established that courts must grant an arbitration panel's decision great deference."  Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S, 333 F.3d 383, 388 (2d Cir. 2003).  The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq. (2006), allows vacatur of an arbitral award:

> (1)  where the award was procured by corruption, fraud, or undue means;
>
> (2)  where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3)  where the arbitrators were guilty of misconduct in refusing to postpone the

10

hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

Id. § 10(a).[6]  We have also recognized that the district court may vacate an arbitral award that exhibits a "manifest disregard" of the law.  Duferco, 333 F.3d at 388 (citing Goldman v. Architectural Iron. Co., 306 F.3d 1214, 1216 (2d Cir. 2002); Westerbeke Corp. v. Daihatsu Motor Co., Ltd., 304 F.3d 200, 208 (2d Cir. 2002).  We do not, however, "recognize manifest disregard of the evidence as proper ground for vacating an arbitrator's award."  Wallace v. Buttar, 378 F.3d 182, 193 (2d Cir. 2004) (citation and internal quotation marks omitted; emphasis added).

III. Stolt-Nielsen's "Manifest Disregard" Claim

A.   Legal Standards

The party seeking to vacate an award on the basis of the arbitrator's alleged "manifest disregard" of the law bears a "heavy burden."  GMS Group, LLC v. Benderson, 326 F.3d 75, 81 (2d Cir. 2003).  "Our review under the [judicially constructed]

---

[6] Section 11 of the FAA, moreover, enumerates various circumstances in which the district court may "modify[] or correct[]" an arbitration award.  9 U.S.C. § 11.

11

doctrine of manifest disregard is 'severely limited.'" Duferco, 333 F.3d at 389 (quoting India v. Cargill Inc., 867 F.2d 130, 133 (2d Cir. 1989)). "It is highly deferential to the arbitral award and obtaining judicial relief for arbitrators' manifest disregard of the law is rare." Id.[7] The "manifest disregard" doctrine allows a reviewing court to vacate an arbitral award only in "those exceedingly rare instances where some egregious impropriety on the part of the arbitrators is apparent." Id.

---

[7] The Duferco court made this point in quantitative terms, noting that between "1960 [and the 2003 Duferco decision] we have vacated some part or all of an arbitral award for manifest disregard in . . . four out of at least 48 cases where we applied the standard." Duferco, 333 F.3d at 389 (collecting cases). The fact that a finding of manifest disregard is "exceedingly rare," id., does not, of course, mean that this appeal does not provide us with just such a case. But to update the observation made by the Duferco court, since Duferco, we have vacated one award, and remanded two others for clarification. See Rich v. Spartis, 516 F.3d 75 (2d Cir. 2008); Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC, 497 F.3d 133 (2d Cir. 2007); Hardy v. Walsh Manning Sec., L.L.C., 341 F.3d 126 (2d Cir. 2003). We count fifteen instances during the same period in which we have declined to do either. See Parnell v. Tremont Capital Mgmt. Corp., 280 F.App'x 76 (2d Cir. 2008) (summary order); Metlife Sec., Inc. v. Bedford, 254 F. App'x 77 (2d Cir. 2007) (summary order); Appel Corp. v. Katz, 217 F. App'x 3 (2d Cir. 2007) (summary order); Nicholls v. Brookdale Univ. Hosp. & Med. Ctr., 204 F. App'x 40 (2d Cir. 2006) (summary order); D.H. Blair & Co. v. Gottdiener, 462 F.3d 95 (2d Cir. 2006); IMC Mar. Group, Inc. v. Russian Farm Cmty. Project, 167 F. App'x 845 (2d Cir. 2006) (summary order); Nutrition 21, Inc. v. Wertheim, 150 F. App'x 108 (2d Cir. 2005) (summary order); Bear, Stearns & Co. v. 1109580 Ontario, Inc., 409 F.3d 87 (2d Cir. 2005); Stone & Webster, Inc. v. Triplefine Int'l Corp., 118 F. App'x 546 (2d Cir. 2004) (summary order); Tobjy v. Citicorp/Inv. Servs., 111 F. App'x 640 (2d Cir. 2004) (summary order); Wallace v. Buttar, 378 F.3d 182 (2d Cir. 2004); IBAR Ltd. v. Am. Bureau of Shipping, 92 F. App'x 820 (2d Cir. 2004) (summary order); Carpenter v. Potter, 91 F. App'x 705 (2d Cir. 2003) (summary order); Banco de Seguros del Estado v. Mut. Marine Office, Inc., 344 F.3d 255 (2d Cir. 2003); Hoeft v. MVL Group, Inc., 343 F.3d 57 (2d Cir. 2003).

Vacatur of an arbitral award is unusual for good reason: The parties agreed to submit their dispute to arbitration, more likely than not to enhance efficiency, to reduce costs, or to maintain control over who would settle their disputes and how -- or some combination thereof. See Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC, 497 F.3d 133, 138-39 (2d Cir. 2007); Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp., 103 F.3d 9, 12 (2d Cir. 1997); see also Note, Judicial Review of Arbitration Awards on the Merits, 63 Harv. L. Rev. 681, 681-82 (1950). "To interfere with this process would frustrate the intent of the parties, and thwart the usefulness of arbitration, making it 'the commencement, not the end, of litigation.'" Duferco, 333 F.3d at 389 (quoting Burchell v. Marsh, 58 U.S. (17 How.) 344, 349 (1854)). It would fail to "maintain arbitration's essential virtue of resolving disputes straightaway." Hall Street Assocs., L.L.C. v. Mattel, Inc., 128 S. Ct. 1396, 1405 (2008).

In this light, "manifest disregard" has been interpreted "clearly [to] mean[] more than error or misunderstanding with respect to the law." Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker, 808 F.2d 930, 933 (2d Cir. 1986). "We are not at liberty to set aside an arbitration panel's award because of an arguable difference regarding the meaning or applicability of laws urged upon it." Id. at 934.

> A federal court cannot vacate an arbitral award merely because it is convinced that the arbitration panel made the wrong call on the law. On the contrary, the award should be

13

> enforced, despite a court's disagreement with it on the merits, if there is a <u>barely colorable justification</u> for the outcome reached.

<u>Wallace</u>, 378 F.3d at 190 (2d Cir. 2004) (citation and internal quotation marks omitted; emphasis added in <u>Wallace</u>).

In the context of contract interpretation, we are required to confirm arbitration awards despite "serious reservations about the soundness of the arbitrator's reading of th[e] contract." <u>Westerbeke Corp.</u>, 304 F.3d at 216 n.10 (2d Cir. 2002). "Whether the arbitrators misconstrued a contract is not open to judicial review." <u>Bernhardt v. Polygraphic Co. of Am.</u>, 350 U.S. 198, 203 n.4 (1956). "Whatever arbitrators' mistakes of law may be corrected, simple misinterpretations of contracts do not appear one of them." <u>I/S Stavborg v. Nat'l Metal Converters, Inc.</u>, 500 F.2d 424, 432 (2d Cir. 1974).

The concept of "manifest disregard" is well illustrated by <u>New York Telephone Co. v. Communications Workers of America Local 1100</u>, 256 F.3d 89 (2d Cir. 2001) (per curiam). There the arbitrator recognized binding Second Circuit case law but deliberately refused to apply it, saying -- no doubt to the astonishment of the parties -- "'Perhaps it is time for a new court decision.'" <u>Id.</u> at 91. Because the arbitrator explicitly rejected controlling precedent, we concluded that the arbitral decision was rendered in manifest disregard of the law. <u>Id.</u> at 93.

14

"The manifest disregard doctrine is not confined to that rare case in which the arbitrator provides us with explicit acknowledgment of wrongful conduct, however." Westerbeke, 304 F.3d at 218 (citing Halligan v. Piper Jaffray, Inc., 148 F.3d 197, 204 (2d Cir. 1998) ("[W]e doubt whether even under a strict construction of the meaning of manifest disregard, it is necessary for arbitrators to state that they are deliberately ignoring the law."), cert. denied, 526 U.S. 1034 (1999)). If the arbitrator's decision "strains credulity" or "does not rise to the standard of barely colorable," id. (citations, internal quotation marks, and brackets omitted), a court may conclude that the arbitrator "willfully flouted the governing law by refusing to apply it," id. at 217.

There are three components to our application of the "manifest disregard" standard.

> First, we must consider whether the law that was allegedly ignored was clear, and in fact explicitly applicable to the matter before the arbitrators. An arbitrator obviously cannot be said to disregard a law that is unclear or not clearly applicable. Thus, misapplication of an ambiguous law does not constitute manifest disregard.

> Second, once it is determined that the law is clear and plainly applicable, we must find that the law was in fact improperly applied, leading to an erroneous outcome. We will, of course, not vacate an arbitral award for an erroneous application of the law if a proper application of law would have yielded the same result. In the same vein, where an arbitral award contains more than one plausible reading, manifest disregard cannot be found if at least one

15

of the readings yields a legally correct justification for the outcome. Even where explanation for an award is deficient or non-existent, we will confirm it if a justifiable ground for the decision can be inferred from the facts of the case.

Third, once the first two inquiries are satisfied, we look to a subjective element, that is, the knowledge actually possessed by the arbitrators. In order to intentionally disregard the law, the arbitrator must have known of its existence, and its applicability to the problem before him. In determining an arbitrator's awareness of the law, we impute only knowledge of governing law identified by the parties to the arbitration. Absent this, we will infer knowledge and intentionality on the part of the arbitrator only if we find an error that is so obvious that it would be instantly perceived as such by the average person qualified to serve as an arbitrator.

Duferco, 333 F.3d at 389-90 (citations omitted).

B.    The Effect of Hall Street on
        the "Manifest Disregard" Doctrine

We pause to consider whether a recent Supreme Court decision, Hall Street Associates, L.L.C. v. Mattel, Inc., 128 S. Ct. 1396 (2008), affects the scope or vitality of the "manifest disregard" doctrine. See Thomas E.L. Dewey & Kara Siegel, Room for Error: 'Hall Street' and the Shrinking Scope of Judicial Review of Arbitral Awards, N.Y.L.J., May 15, 2008, at 24 (commenting that Hall Street "appeared to question the validity" of the manifest disregard doctrine).

There, the parties had entered into an arbitration agreement that, unlike the FAA, provided for a federal court's de

16

novo review of the arbitrator's conclusions of law.  Hall Street, 128 S. Ct. at 1400-01.  The Court rejected the parties' attempt to contract around the FAA for expanded judicial review of arbitration awards, concluding that the grounds for vacatur of an arbitration award set forth in the FAA, 9 U.S.C. § 10, are "exclusive."  Hall Street, 128 S. Ct. at 1401, 1403.  Although the "manifest disregard" doctrine was not itself at issue, the Hall Street Court nonetheless commented on its origins:

> The Wilco Court . . . remarked (citing FAA § 10) that "[p]ower to vacate an [arbitration] award is limited," and went on to say that "the interpretations of the law by the arbitrators in contrast to manifest disregard [of the law] are not subject, in the federal courts, to judicial review for error in interpretation."

Hall Street, 128 S. Ct. at 1403 (quoting Wilko, 346 U.S. at 436-37) (citations omitted) (second, third, and fourth alterations in Hall Street).

> Maybe the term "manifest disregard" was meant to name a new ground for review, but maybe it merely referred to the § 10 grounds collectively, rather than adding to them. Or, as some courts have thought, "manifest disregard" may have been shorthand for § 10(a)(3) or § 10(a)(4), the subsections authorizing vacatur when the arbitrators were "guilty of misconduct" or "exceeded their powers."

Id. at 1404 (citations omitted).  The Court declined to resolve that question explicitly, noting instead that it had never indicated, in Wilko or elsewhere, that "manifest disregard" was an independent basis for vacatur outside the grounds provided in section 10 of the FAA.  See id.

17

In the short time since Hall Street was decided, courts have begun to grapple with its implications for the "manifest disregard" doctrine. Some have concluded or suggested that the doctrine simply does not survive. See Ramos-Santiago v. United Parcel Service, 524 F.3d 120, 124 n.3 (1st Cir. 2008) (dicta); Robert Lewis Rosen Assocs., Ltd. v. Webb, 566 F.Supp.2d 228, 233 (S.D.N.Y. 2008); Prime Therapeutics LLC v. Omnicare, Inc., 555 F. Supp. 2d 993, 999 (D. Minn. 2008); Hereford v. D.R. Horton, Inc., -- So. 2d --, No. 1070396, 2008 WL 4097594, *5, 2008 Ala. LEXIS 186, *12-*13 (Ala. Sept. 5, 2008). Others think that "manifest disregard," reconceptualized as a judicial gloss on the specific grounds for vacatur enumerated in section 10 of the FAA, remains a valid ground for vacating arbitration awards. See MasTec N. Am., Inc. v. MSE Power Sys., Inc., No. 1:08-cv-168, 2008 WL 2704912, at *3, 2008 U.S. Dist. LEXIS 52205, at *8-9 (N.D.N.Y. July 8, 2008); Chase Bank USA, N.A. v. Hale, 859 N.Y.S.2d 342, 349 (Sup. Ct. N.Y. County 2008).

We agree with those courts that take the latter approach. The Hall Street Court held that the FAA sets forth the "exclusive" grounds for vacating an arbitration award. Hall Street, 128 S. Ct. at 1403. That holding is undeniably inconsistent with some dicta by this Court treating the "manifest disregard" standard as a ground for vacatur entirely separate from those enumerated in the FAA. See, e.g., Hoeft, 343 F.3d at 64 (describing manifest disregard as "an additional ground not prescribed in the [FAA]"); Duferco, 333 F.3d at 389 (observing

18

that the doctrine's use is limited to instances "where none of the provisions of the FAA apply"); DiRussa v. Dean Witter Reynolds Inc., 121 F.3d 818, 821 (2d Cir. 1997) (referring to the doctrine as "judicially-created"), cert. denied, 522 U.S. 1049 (1998); Merrill Lynch, Pierce, Fenner & Smith, Inc., 808 F.2d at 933 (same).[8] But the Hall Street Court also speculated that "the term 'manifest disregard' . . . merely referred to the § 10 grounds collectively, rather than adding to them" -- or as "shorthand for § 10(a)(3) or § 10(a)(4)." Hall Street, 128 S. Ct. at 1404. It did not, we think, abrogate the "manifest disregard" doctrine altogether.[9]

We agree with the Seventh Circuit's view expressed before Hall Street was decided:

It is tempting to think that courts are engaged in judicial review of arbitration awards under the Federal Arbitration Act, but they are not. When parties agree to

---

[8] But see I/S Stavborg, 500 F.2d at 431 (2d Cir. 1974) ("But perhaps the rubric 'manifest disregard' is after all not to be given independent significance; rather it is to be interpreted only in the context of the specific narrow provisions of 9 U.S.C. §§ 10 & 11 . . . ." (footnote omitted)); Amicizia Societa Navegazione v. Chilean Nitrate & Iodine Sales Corp., 274 F.2d 805, 808 (2d Cir.) ("It is true that an award may be vacated where the arbitrators have 'exceeded their powers.' 9 U.S.C. § 10(d). Apparently relying upon this phrase, the Supreme Court in Wilko v. Swan suggested that an award may be vacated if in 'manifest disregard' of the law."), cert. denied, 363 U.S. 843 (1960) (internal citation omitted).

[9] Cf. State Employees Bargaining Agent Coal. v. Rowland, 494 F.3d 71, 84, 86 (2d Cir. 2007) (adhering to Circuit precedent despite the Supreme Court having "cryptically cast doubt" on prior holdings, noting that "[w]e are bound by our own precedent unless and until its rationale is overruled, implicitly or expressly, by the Supreme Court or this court en banc" (citation and internal quotation marks omitted)).

19

> arbitrate their disputes they opt out of the court system, and when one of them challenges the resulting arbitration award he perforce does so not on the ground that the arbitrators made a mistake but that they violated the agreement to arbitrate, as by corruption, evident partiality, exceeding their powers, etc. -- conduct to which the parties did not consent when they included an arbitration clause in their contract. That is why in the typical arbitration . . . the issue for the court is not whether the contract interpretation is incorrect or even wacky but whether the arbitrators had failed to interpret the contract at all, for only then were they exceeding the authority granted to them by the contract's arbitration clause.

Wise v. Wachovia Sec., LLC, 450 F.3d 265, 269 (7th Cir.) (citations omitted), cert. denied, 127 S. Ct. 582 (2006). This observation is entirely consistent with Hall Street. And it reinforces our own pre-Hall Street statements that our review for manifest disregard is "severely limited," "highly deferential," and confined to "those exceedingly rare instances" of "egregious impropriety on the part of the arbitrators." Duferco, 333 F.3d at 389.

Like the Seventh Circuit, we view the "manifest disregard" doctrine, and the FAA itself, as a mechanism to enforce the parties' agreements to arbitrate rather than as judicial review of the arbitrators' decision. We must therefore continue to bear the responsibility to vacate arbitration awards in the rare instances in which "the arbitrator knew of the relevant [legal] principle, appreciated that this principle controlled the outcome of the disputed issue, and nonetheless willfully flouted the governing law by refusing to apply it."

20

*Westerbeke*, 304 F.3d at 217. At that point the arbitrators have "failed to interpret the contract at all," *Wise*, 450 F.3d at 269, for parties do not agree in advance to submit to arbitration that is carried out in manifest disregard of the law. Put another way, the arbitrators have thereby "exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4).

## C. Analysis of Stolt-Nielsen's "Manifest Disregard" Claim

If we were of the view that *Hall Street*, decided after the district court granted the petition in this case, eliminated "manifest disregard" review altogether, our inquiry would be at an end. We would be required to send this matter back to the district court for it to dismiss the petition on that ground. But in light of our conclusion that the "manifest disregard" doctrine survives *Hall Street*, we must instead decide whether the district court's finding of "manifest disregard" was correct.[10]

1. *Review of the District Court's Opinion.* According to the district court, the arbitration panel went astray when it "failed to make any meaningful choice-of-law analysis." *Stolt-Nielsen*, 435 F. Supp. 2d at 385.

---

[10] We undertake this task cognizant of the fact that the district court did not have the benefit of the *Hall Street* decision and its requirement that courts adhere scrupulously to a narrow, FAA-tethered view of their authority to vacate arbitration awards based on manifest disregard of the law.

> In actuality, the choice of law rules in this situation are well established and clear cut. Because the arbitration clauses here in issue are part of maritime contracts, they are controlled in the first instance by federal maritime law.

Id. Because the arbitrators failed to recognize that the dispute was governed by federal maritime law, the district court reasoned, they ignored the "established rule of maritime law" that the interpretation of contracts "is . . . dictated by custom and usage." Id. at 385-86. Even under state law, the arbitral panel was required to interpret contracts in light of "industry custom and practice." Id. at 386 (citation and internal quotation marks omitted). The district court concluded that, had the arbitration panel followed these well-established canons,

> the [p]anel would necessarily have found for Stolt, since, as the [p]anel itself noted, Stolt presented uncontested evidence that the clauses here in question had never been the subject of class action arbitration.

Id. (emphasis in original).

Had the district court been charged with reviewing the arbitration panel's decision de novo, we might well find its analysis persuasive. See Westerbeke, 304 F.3d at 216 n.10. But the errors it identified do not, in our view, rise to the level of manifest disregard of the law.

**a. Choice of Law**

First, the arbitral panel did not "manifestly disregard" the law in engaging in its choice-of-law analysis. See Stolt-Nielsen, 435 F. Supp. 2d at 385-86.

The "manifest disregard" standard requires that the arbitrators be "fully aware of the existence of a clearly defined governing legal principle, but refuse[] to apply it, in effect, ignoring it." Duferco, 333 F.3d at 389. "In determining an arbitrator's awareness of the law, we impute only knowledge of governing law identified by the parties to the arbitration." Id. at 390.

Stolt-Nielsen's brief to the arbitration panel referred to choice-of-law principles in a single footnote without citing supporting case law. It then assured the panel that the issue was immaterial:

> Claimants argue that the law of New York governs these contracts . . . . We believe, to the contrary, that because these are federal maritime contracts, federal maritime law should govern. The Tribunal need not decide this issue, however, because the analysis is the same under either.

Stolt-Nielsen's Arbitration Br. 7 n.13. This concession bars us from concluding that the panel manifestly disregarded the law by not engaging in a choice-of-law analysis and expressly identifying federal maritime law as governing the interpretation of the charter party language.[11]

We are not convinced that the arbitral panel, in any event, "failed to make any meaningful choice-of-law analysis."

---

[11] Had the arbitrators looked to the charter parties themselves for a choice-of-law provision, as of course they may have, they would have found none. See Stolt-Nielsen, 435 F. Supp. 2d at 385 n.2.

Even where an arbitrator's explanation for an award is deficient, we must confirm it if a justifiable ground for the decision can be inferred from the record. See Bear, Stearns & Co. v. 1109580 Ontario, Inc., 409 F.3d 87, 91 (2d Cir. 2005); Duferco, 333 F.3d at 390; see also Wallace, 378 F.3d at 190 (2d Cir. 2004) ("[A] court reviewing an arbitral award cannot presume that the arbitrator is capable of understanding and applying legal principles with the sophistication of a highly skilled attorney."). The first paragraph of the arbitrators' discussion of the law states that they "must look to the language of the parties' agreement to ascertain the parties' intention whether they intended to permit or to preclude class action. This is . . . consistent with New York law . . . and with federal maritime law." Clause Construction Award 4. Although the panel did not use the term "choice of law," it is a plausible reading of the award decision that the panel intended to interpret the charter parties according to the rules of both New York State law and federal maritime law -- each of which, the panel thought,

would render the same result.[12]  That is what Stolt-Nielsen had asked it to do.

### b.   Federal Maritime Rule of Construction

Second, the arbitration panel did not manifestly disregard the law with respect to an established "rule" of federal maritime law.  See Stolt-Nielsen, 435 F. Supp. 2d at 386.

Although the district court's opinion states that the interpretation of maritime contracts "is very much dictated by custom and usage," id. at 385-86, custom and usage is more of a guide than a rule, see Great Circle Lines, Ltd. v. Matheson & Co., 681 F.2d 121, 125 (2d Cir. 1982) ("Certain long-standing customs of the shipping industry are crucial factors to be considered when deciding whether there has been a meeting of the minds on a maritime contract."); Schoonmaker-Conners Co. v. Lambert Transp. Co., 269 F. 583, 585 (2d Cir. 1920) ("While maritime contracts or their interpretation are probably more

---

[12]  We find it instructive that under New York choice-of-law principles,

> the first question to resolve in determining whether to undertake a choice of law analysis is whether there is an actual conflict of laws.  It is only when it can be said that there is no actual conflict that New York will dispense with a choice of law analysis.

Fieger v. Pitney Bowes Credit Corp., 251 F.3d 386, 393 (2d Cir. 2001) (citations and internal quotation marks omitted).  Another plausible reading of the arbitration award, then, is that the panel concluded there was no need to make a "choice of law" between federal maritime law and New York law because there was no actual conflict of laws in the case before it.

25

subject to the influence of usage or general custom than most other agreements, yet they are and a charter is a contract like another, subject to the same general rules and leading to the same liabilities."); <u>Samsun Corp. v. Khozestan Mashine Kar Co.</u>, 926 F. Supp. 436, 439 (S.D.N.Y. 1996) ("[E]stablished practices and customs of the shipping industry inform the court's analysis of what the parties agreed to.").[13]  Thus, although the custom and usage rule is "clear and plainly applicable" as a general matter in disputes over the meaning of charter parties, <u>Duferco</u>, 333 F.3d at 390, it should "be considered," "influence" interpretation, and "inform the court's analysis."  It does not govern the outcome of each case.

Indeed, Stolt-Nielsen cites no decision holding that a federal maritime rule of construction specifically precludes class arbitration where a charter party's arbitration clause is silent.  <u>Cf.</u> <u>Bazzle v. Green Tree Fin. Corp.</u> ("<u>Bazzle I</u>"), 569 S.E.2d 349, 360 (S.C. 2002) (holding as a matter of state law that "class-wide arbitration may be ordered when the arbitration agreement is silent"), <u>vacated on other grounds</u>, 539 U.S. 444 (2003).  To the contrary, during oral argument before the arbitration panel, counsel for Stolt-Nielsen conceded that the

_____

[13]  According to Stolt-Nielsen's submission to the arbitration panel, "both New York state law and federal maritime law <u>allow</u> a court or arbitrator to examine the negotiating history and the context in which the contract was executed in order to ascertain the parties' intent."  Stolt-Nielsen's Arbitration Br. 15 (emphasis added).

26

interpretation of the charter parties in this case was an issue of first impression.

Stolt-Nielsen's challenge to the Clause Construction Award therefore boils down to an argument that the arbitration panel misinterpreted the arbitration clauses before it because the panel misapplied the "custom and usage" rule. But we have identified an arbitrator's interpretation of a contract's terms as an area we are particularly loath to disturb. See Westerbeke, 304 F.3d at 214 ("The arbitrator's factual findings and contractual interpretation are not subject to judicial challenge, particularly on our limited review of whether the arbitrator manifestly disregarded the law."); id. at 222 (holding that "vacatur for manifest disregard of a commercial contract is appropriate only if the arbitral award contradicts an express and unambiguous term of the contract or if the award so far departs from the terms of the agreement that it is not even arguably derived from the contract" (emphases added)); John T. Brady & Co. v. Form-Eze Sys., Inc., 623 F.2d 261, 264 (2d Cir.) ("This court has generally refused to second guess an arbitrator's resolution of a contract dispute."), cert. denied, 449 U.S. 1062 (1980).

As for whether the panel misapplied the "custom and usage" rule, we have held that "the misapplication . . . of . . . rules of contract interpretation does not rise to the stature of a 'manifest disregard' of law." Amicizia Societa Navegazione v. Chilean Nitrate & Iodine Sales Corp., 274 F.2d 805, 808 (2d Cir.), cert. denied, 363 U.S. 843 (1960). And determinations of

27

custom and usage are findings of fact, <u>Mentor Ins. Co. (U.K.) v. Brannkasse</u>, 996 F.2d 506, 513 (2d Cir. 1993), which federal courts may not review even for manifest disregard, <u>Wallace</u>, 378 F.3d at 193.

The arbitration panel, after summarizing Stolt-Nielsen's argument with respect to custom and usage, "acknowledge[d] the forcefulness with which [it was] presented," but concluded that it failed to "establish that the parties to the charter agreements intended to preclude class arbitration." Clause Construction Award 7. The panel thus considered Stolt-Nielsen's arguments and found them unpersuasive. Its conclusion does not "contradict[] an express and unambiguous term of the contract or . . . so far depart[] from the terms of the agreement that it is not even arguably derived from the contract." <u>Westerbeke</u>, 304 F.3d at 222. It therefore did not evidence manifest disregard of the law.

### c. State Law

Third, the arbitration panel did not manifestly disregard New York State law. <u>See</u> <u>Stolt-Nielsen</u>, 435 F. Supp. 2d at 387.

The district court noted that New York State law, much like federal maritime law, requires courts to interpret ambiguous contracts by reference to "industry custom and practice," <u>id.</u> (citation and internal quotation marks omitted); it takes a "narrow view of what can be read into a contract by implication," <u>id.</u> at 387. The district court concluded that to whatever extent

28

state law applied, it would require the arbitration panel to construe the arbitration clauses not to permit arbitration on behalf of a class. Id.

We agree with the district court's observation that state law follows a "custom and practice" canon of construction where the terms of a contract are ambiguous. See Evans v. Famous Music Corp., 1 N.Y.3d 452, 459-60, 775 N.Y.S.2d 757, 762, 807 N.E.2d 869, 873 (2004).[14] But it is also state law that the courts'

> role in interpreting a contract is to ascertain the intention of the parties at the time they entered into the contract. If that intent is discernible from the plain meaning of the language of the contract, there is no need to look further. This may be so even if the contract is silent on the disputed issue.

Id. at 458. Here, the arbitration panel may have concluded that even though the arbitration clauses are silent on the disputed issue of whether class arbitration is permitted, their silence bespeaks an intent not to preclude class arbitration. That reading, which is at least "colorable," is consistent with Evans.

The district court also cited myriad New York cases that take a narrow view of what can be read into a contract or arbitration clause by implication. See Stolt-Nielsen, 435 F. Supp. 2d at 386-87. But none of these cases purports to establish a rule regarding the interpretation of an arbitration

---

[14] Evans was cited in AnimalFeeds's arbitration brief, in the Clause Construction Award, and in the district court's opinion. See Stolt-Nielsen, 435 F. Supp. 2d at 386.

clause that is silent on the issue of class arbitration. Indeed, the cases largely beg the question whether contractual silence means that the parties did not intend to allow class actions or did not intend to bar them. Because no state-law rule of construction clearly governs the question of whether class arbitration is permitted by an arbitration clause that is silent on the subject, the arbitrators' decision construing such silence to permit class arbitration in this case is not in manifest disregard of the law. See Cheng v. Oxford Health Plans, Inc., 45 A.D.3d 356, 357, 846 N.Y.S.2d 16, 17-18 (1st Dep't 2007) (per curiam) (determining arbitration panel did not exhibit manifest disregard of law when it concluded that "defendants could not successfully demonstrate that New York law prohibited class arbitrations").

     2. Stolt-Nielsen's Glencore/Boeing Argument. The district court did not reach another argument made by Stolt-Nielsen in support of vacating the Clause Construction Award for manifest disregard of the law. According to Stolt-Nielsen, this court's decisions in Glencore, Ltd. v. Schnitzer Steel Products, 189 F.3d 264 (2d Cir. 1999), and United Kingdom v. Boeing Co., 998 F.2d 68 (2d Cir. 1993), along with the Seventh Circuit's decision in Champ v. Siegel Trading Co., 55 F.3d 269 (7th Cir. 1995), prohibit class arbitration unless expressly provided for in an arbitration agreement. These cases do lend support to Stolt-Nielsen's underlying argument regarding the correct interpretation of the arbitration clauses at issue. We do not

30

think, however, that they establish law that is so clearly and plainly applicable that we are compelled to conclude that the arbitration panel willfully ignored it, thereby manifestly disregarding the law.

In Boeing, the United Kingdom was a party to two distinct contracts with two different parties giving rise to two separate arbitration proceedings. Boeing, 998 F.2d at 69. Because the two disputes arose from a single incident, the district court, on the motion of the United Kingdom, ordered consolidation of the arbitration proceedings even though neither arbitration clause expressly permitted consolidation. Id. We reversed, because "a district court cannot order consolidation of arbitration proceedings arising from separate agreements to arbitrate absent the parties' agreement to allow such arbitration." Id.

The facts of Glencore are similar. The petitioner was involved in two separate arbitration proceedings arising from separate contracts with two different parties. Glencore, 189 F.3d at 265-66. The district court in that case refused to consolidate the arbitration proceedings but ordered a joint hearing. Id. at 266. Again we reversed, because "Boeing's conclusion that there is no source of authority in either the FAA or the Federal Rules of Civil Procedure for the district court to order consolidation absent authority granted by the contracts giving rise to the arbitrations applies with equal force to a court's order of joint hearing." Id. at 267.

31

In *Champ*, the Seventh Circuit affirmed a district court's order denying class arbitration where the arbitration agreements were silent on that issue. *Champ*, 55 F.3d at 277. The court relied in large part on our decision in *Boeing* prohibiting consolidation under such circumstances; it "f[ou]nd no meaningful basis to distinguish between the failure to provide for consolidated arbitration and class arbitration." *Id.* at 275.

These decisions are not binding in this case. After they were decided, the Supreme Court ruled in *Green Tree Financial Corp. v. Bazzle* ("*Bazzle II*"), 539 U.S. 444 (2003), that when the parties agree to arbitrate, the question whether the agreement permits class arbitration is generally one of contract interpretation to be determined by the arbitrators, not by the court. *Id.* at 452-53. *Boeing*, *Glencore*, and *Champ* had been grounded in federal arbitration law to the effect that the FAA itself did not permit consolidation, joint hearings, or class representation absent express provisions for such proceedings in the relevant arbitration clause. *See Glencore*, 189 F.3d at 267; *Champ*, 55 F.3d at 275; *Boeing*, 998 F.2d at 71. *Bazzle II* abrogated those decisions to the extent that they read the FAA to prohibit such proceedings. *See Bazzle II*, 539 U.S. at 454-55 (Stevens, J., concurring) ("[t]here is nothing in the Federal Arbitration Act that precludes . . . the Supreme Court of South Carolina" from determining "as a matter of state law that class-action arbitrations are permissible if not prohibited by the applicable arbitration agreement"). After *Bazzle II*, arbitrators

32

must approach such questions as issues of contract interpretation to be decided under the relevant substantive contract law. <u>See</u> <u>id.</u> at 450 (noting that state law normally governs contract interpretation).

Boeing, <u>Glencore</u>, and <u>Champ</u> are instructive insofar as they view the silence of an arbitration clause regarding consolidation, joint hearings, and class arbitration as disclosing the parties' intent not to permit such proceedings. <u>See</u> <u>Glencore</u>, 189 F.3d at 267 ("There is nothing in the terms of the agreements before the district court that provided for joint hearing."); <u>Champ</u>, 55 F.3d at 275 ("The parties' arbitration agreement makes no mention of class arbitration."); <u>Boeing</u>, 998 F.2d at 74 ("If contracting parties wish to have all disputes that arise from the same factual situation arbitrated in a single proceeding, they can simply provide for consolidated arbitration in the arbitration clauses to which they are a party."). But they do not represent a governing rule of contract interpretation under federal maritime law or the law of New York. And it is the governing rules of contract interpretation that arbitrators must consult according to <u>Bazzle II</u>.

As noted, Stolt-Nielsen has cited no federal maritime law or New York State law establishing a rule of construction prohibiting class arbitration where the arbitration clause is silent on that issue.[15] The arbitration panel's decision to

---

[15] Nor is <u>Champ</u> adhered to in every jurisdiction. <u>See</u> Jean R. Sternlight, <u>As Mandatory Binding Arbitration Meets the Class Action, Will the Class Action Survive?</u>, 42 Wm. & Mary L. Rev. 1,

construe the contract language at issue here to permit class arbitration was therefore not in manifest disregard of the law.

### IV.  Stolt-Nielsen's Claim That the Arbitrators Exceeded Their Authority

In addition to asserting that the arbitration panel acted in manifest disregard of the law, Stolt-Nielsen contends that the arbitration panel "exceeded its authority."  Appellees' Br. 18.  Although the district court did not reach this claim, it was preserved for appeal.[16]

The FAA provides for vacatur of arbitration awards "where the arbitrators exceeded their powers."  9 U.S.C. § 10(a)(4).  We may disregard, in this instance, the post-Hall Street view that arbitrators may "exceed their powers" when they manifestly disregard the law; we have rejected Stolt-Nielsen's "manifest disregard" claim.  The remainder of "[o]ur inquiry under § 10(a)(4) . . . focuses on whether the arbitrators had the power, based on the parties' submissions or the arbitration

---

67-69 & n.260 (2000)(noting that state courts in California and Pennsylvania have allowed class arbitration "even though the arbitration clause is silent"); see also Keating v. Superior Court, 31 Cal.3d 584, 613, 183 Cal. Rptr. 360, 378, 645 P.2d 1192, 1210 (1982), rev'd on other grounds sub nom. Southland Corp. v. Keating, 465 U.S. 1 (1984); Dickler v. Shearson Lehman Hutton, Inc., 408 Pa. Super. 286, 296, 596 A.2d 860, 864-65 (Super. Ct. 1991).

[16]  We perceive no need to remand for the district court to consider this claim in the first instance, as it has been briefed, entails no findings of fact, and is a pure question of law we review de novo.  See Ohio Bureau of Employment Servs. v. Hodory, 431 U.S. 471, 482 (1977); United States v. Canfield, 212 F.3d 713, 721 (2d Cir. 2000).

34

agreement, to reach a certain issue, not whether the arbitrators correctly decided that issue." DiRussa, 121 F.3d at 824; see also Hoeft, 343 F.3d at 71; Westerbeke, 304 F.3d at 219-20.

Here, the arbitration panel clearly had the power to reach the issue of whether the Vegoilvoy agreement permitted class arbitration. The parties expressly agreed that the arbitration panel "shall follow and be bound by Rules 3 through 7 of the American Arbitration Association's Supplementary Rules for Class Arbitrations," Class Arbitration Agreement 3. Rule 3 of the Supplementary Rules provides that "the arbitrator shall determine as a threshold matter, in a reasoned, partial final award on the construction of the arbitration clause, whether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class." Because the parties specifically agreed that the arbitration panel would decide whether the arbitration clauses permitted class arbitration, the arbitration panel did not exceed its authority in deciding that issue -- irrespective of whether it decided the issue correctly.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is reversed and the cause remanded to the district court with instructions to deny the petition to vacate.[17]

---

[17] Because we reverse the district court's "manifest disregard" holding and reject Stolt-Nielsen's claim that the arbitrators exceeded their authority, we need not and do not consider AnimalFeeds's assertion that denial of the petition is required on public policy grounds, viz., that class arbitration is necessary to vindicate important statutory rights under the Sherman Antitrust Act.

35