# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 07-3454

———————

Crawford Group, Inc.,          *

                   Appellant,      *

                               *   Appeal from the United States
      v.                      *   District Court for the
                               *   Eastern District of Missouri.

William F. Holekamp,       *
an individual,            *

                               *

                  Appellee.       *

———————

Submitted: May 15, 2008
Filed: October 6, 2008 (corrected 10/15/08)

———————

Before WOLLMAN, MURPHY, and SMITH, Circuit Judges.

———————

WOLLMAN, Circuit Judge.

The Crawford Group, the parent company of Enterprise Rent-A-Car, appeals from the district court's[1] order confirming an arbitration award of some $20.7 million in favor of William F. Holekamp in a dispute over the value of Holekamp's stock in the company. We affirm.

---

[1]The Honorable Charles A. Shaw, United States District Judge for the Eastern District of Missouri.

Holekamp began his employment with Crawford in St. Louis in 1976, having earlier worked for Enterprise Car Rental. In 1980, Holekamp was transferred to California for the purpose of acquiring on Crawford's behalf a rental car company that was experiencing financial difficulties. As Holekamp described it,

> [t]he company that we acquired was in a lot of trouble. They had a bunch of Pintos sitting on the lot. We were pushing Pintos up and down the lot, jump starting them because the batteries were gone, they had been sitting there for about six months, but we had to put them out on rent.

Holekamp was successful in his efforts to revive the newly acquired moribund company, and he was rewarded accordingly by way of salary and a percentage of the profits. He returned to St. Louis in 1992 as executive vice president of Enterprise. He retired at the end of 2000, becoming a consultant for an initial term of five years.

In 1999, Crawford began considering pursuing public financing for the company, either through debt or equity. It was advised that to make such a public offering attractive it should replace its method of compensating its senior executives through large cash bonuses with a plan of compensation by way of awards of stock.

Crawford's decision to follow this advice resulted in the 24-page February 2, 2000, Stock Award and Shareholder Agreement (Agreement) at issue in this appeal.[2] The Agreement provided that for the purpose of the initial grant, the value of the stock was to be determined by Arthur Andersen LLP.

---

[2]The parties also entered into what was called the "BV Agreement," which is not at issue in this appeal.

Paragraph 6(a) of the Agreement provides as follows:

The purchase price for Shares shall be the value of such Shares as determined by the Administrator in good faith, disregarding the option available to Shareholder under paragraph 4(a), as of the date of the Trigger Event [*i.e.*, July 31, 2004] or, if the Administrator in good faith determines that the use of such exact date would produce an inappropriate valuation, that date, as determined by the Administrator in good faith, which is prior to and closest to the date of the Trigger Event and which would not produce an inappropriate valuation ("Purchase Price"). In determining the Purchase Price, the Administrator shall apply valuation principles substantially the same as those which applied to valuing the Award on the Award Date (which disregarded the option available to Shareholder under paragraph 4(a)), unless the Administrator in good faith determines that the use of such valuation principles would produce an inappropriate valuation. The Administrator's determination of the Purchase Price shall be final and binding on all parties.

Paragraph 15 provides in part:

[A]ny controversy or claim that arises out of or in any way relates to this Agreement, . . . shall be resolved solely by binding arbitration . . . . Company shall be entitled to appoint one arbitrator, and all other parties to the dispute . . . shall be entitled to appoint one arbitrator. . . . The two arbitrators so appointed shall choose the third arbitrator. . . . Each arbitrator shall have experience in arbitrating matters substantially similar to the matter being arbitrated pursuant to this paragraph 15. The arbitration shall be conducted in accordance with the Commercial Arbitration Rules of the AAA or such other rules as determined by a majority of the arbitrators serving. The arbitration award may grant damages and/or any other relief deemed by the arbitrators to be just, . . . provided, however, the arbitrators hall have no authority to amend this Agreement. The arbitration award shall be final and binding on the parties to the arbitration.

In June 2004, Crawford informed Holekamp that it intended to repurchase Holekamp's stock in accordance with the terms of the Agreement. It tendered payment in the amount of $11.4 million, based on the Administrator's determination of a price of $25.32 per share, which in turn was derived from an appraisal conducted by Deloitte & Touche. In response, Holekamp filed a demand for arbitration, alleging, in pertinent part, that Crawford's call and proposed valuation of the stock breached the Agreement. Crawford responded by filing suit in Missouri state court requesting specific performance of the repurchase provisions of the Agreement. Holekamp countered with the same claims that he had brought in his arbitration demand and further alleged that the Agreement required Crawford to arbitrate its claims. On summary judgment, the court granted Crawford specific performance of the repurchase provisions. Finding that there was an issue with respect to the price under the Agreement, the court concluded that "[i]n accordance with the parties' agreements, such dispute over value is to be determined by arbitration." The Missouri Court of Appeals summarily affirmed.

Holekamp designated Harry V. Ruffalo as an arbitrator, attaching a copy of his vitae, which showed that Ruffalo held a law degree and that he had retired in 2000 after a 33-year partnership with Arthur Andersen & Co. The vitae did not indicate that Ruffalo had any arbitration experience, and so Crawford requested confirmation from the American Arbitration Association (AAA) that Ruffalo had experience as an arbitrator and that he possessed the experience required by the Agreement. In response, the AAA informed the parties that it had appointed Ruffalo to serve as an arbitrator and enclosed a disclosure from Ruffalo in which he stated, among other things, that "as a worldwide managing partner of tax, legal and business advisory services from 1989 to 1997, I arbitrated from 200 to 400 matters." Among the matters described were a dispute over executive compensation and Ruffalo's participation as a member of the legal team representing Arthur Andersen in a large arbitration matter. After concluding that the additional information provided by the AAA did not establish that Ruffalo had the necessary experience, Crawford again expressed to the

-4-

AAA its objection that Ruffalo did not meet the requirements set forth in Paragraph 15. Its letter detailing its perceptions of Ruffalo's lack of experience in arbitration matters concluded by saying: "Under Rule 17(b) of the AAA's Commercial Arbitration Rules, the AAA is responsible for making the determination of whether Mr. Ruffalo possesses the qualifications to serve as an arbitrator in this particular matter. We believe it is particularly important in this case that the AAA make this determination." In response to Crawford's renewed objection, the AAA sent the parties a letter that stated in part: "After careful consideration of the parties' contentions, the Association has determined that Harry V. Ruffalo will be reaffirmed as an arbitrator in the above matter."

Following a three-day hearing, the arbitrators entered an interim award, in which Arbitrators Ruffalo and Best set the purchase price of Holekamp's stock at $45.90 a share. Arbitrator Dietrich filed a dissent.

Crawford then commenced the present diversity action, which seeks to vacate the arbitration award under the provisions of the Federal Arbitration Act (FAA), 9 U.S.C. § 10(a). Holekamp filed an alternative motion to confirm the award. It is from the district court's confirmation of the award that Crawford appeals.

On appeal from a district court's order confirming, modifying, or vacating an arbitration award, we review findings of fact for clear error and questions of law *de novo*. Stark v. Sandberg, Phoenix & von Gontard, P.C., 381 F.3d 793, 798 (8th Cir. 2004) (citing First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 947-48 (1995)). The district court affords the arbitrator's decisions "an extraordinary level of deference" and confirms "so long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority." Id. (internal quotations omitted); see First Options, 514 U.S. at 943 ("[T]he court should give considerable leeway to the arbitrator, setting aside his or her decision only in certain narrow circumstances." (citing 9 U.S.C. § 10)). An arbitral award may be vacated only for

the reasons enumerated in the FAA. <u>Hall Street Assoc., L.L.C. v. Mattel, Inc.</u>, 128 S. Ct. 1396, 1403 (2008); <u>Stark</u>, 381 F.3d at 799; <u>see</u> 9 U.S.C. § 10(a).

Crawford's primary argument on appeal is that the selection and appointment of arbitrator Ruffalo was not in accordance with the Agreement, with the result that the arbitration panel exceeded its power to issue the award. As an initial matter, and contrary to Holekamp's contention, we conclude that Crawford did not forfeit judicial review of the AAA's decision to confirm Ruffalo as an arbitrator by failing to bring the issue before the state court at the time of the AAA's decision. <u>See</u> <u>Cox v. Piper, Jaffray & Hopwood, Inc.</u>, 848 F.2d 842, 843-44 (8th Cir. 1988) ("Appellants cannot obtain judicial review of the [AAA's] decisions about the qualifications of arbitrators or other matters prior to the making of an award."); <u>see also</u> <u>Aviall, Inc. v. Ryder Sys., Inc.</u>, 110 F.3d 892, 895 (2d Cir. 1997) (under the FAA, courts may not hear a pre-award challenge to an arbitrator unless it forms the basis for the revocation of the contract) (interpreting 9 U.S.C. § 2).

Because the Agreement explicitly states that arbitration would be conducted in accordance with the Commercial Arbitration Rules of the American Arbitration Association (AAA Rules), the parties agreed to the method provided by the rules for the resolution of disputes concerning the disqualification of arbitrators. Pursuant to Rule 17(b) of the AAA Rules, the parties designated the AAA to decide the issue in the first instance. Rule 17(b) provides that: "Upon objection of a party to the continued service of an arbitrator, or on its own initiative, the AAA shall determine whether the arbitrator should be disqualified . . . which decision shall be conclusive." The district court thus reviewed the AAA's decision under the deferential standards for vacatur of the ensuing arbitration award, and we do the same.

We may vacate an arbitration award pursuant to 9 U.S.C. § 10(a)(4) if the arbitrators have exceeded their powers under the arbitration agreement. Arbitrators exceed their powers if, *inter alia*, the method of their appointment provided in the

agreement has not been followed.  Hugs & Kisses, Inc. v. Aguirre, 220 F.3d 890, 893 (8th Cir. 2000); see 9 U.S.C. § 5 ("If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed . . . ."). Crawford does not argue that the procedures outlined in the Agreement for the appointment of arbitrators were not followed.  Instead, it argues that Ruffalo did not possess the qualifications required by the Agreement. Assuming, without deciding, that the term "method" in section 5 of the FAA includes the parties' agreed-upon qualifications as well as procedures, we conclude that the parties' method of appointment was arguably followed, as was their chosen method of resolving the issue. Crawford challenged Ruffalo's appointment under AAA Rule 17, the parties submitted their arguments and supporting documentation to the AAA, and the AAA made the determination that Ruffalo was qualified to serve as an arbitrator. See Reeve Bros. v. Capital-Mercury Shirt Corp., 962 F. Supp. 408, 411 (S.D.N.Y. 1997).

AAA Rule 17(a)(iii) permits the AAA to disqualify an arbitrator for "any grounds for disqualification provided by applicable law." The applicable law is section 5 of the FAA, which provides that "[i]f in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed . . . ." 9 U.S.C. § 5. Based on the above-described information provided to the AAA with respect to Ruffalo's qualifications, we conclude that the AAA's decision that he was qualified to serve is an arguable interpretation of the provision that "Each arbitrator shall have experience in arbitrating matters substantially similar to the matter being arbitrated . . . ." Accordingly, we conclude that the AAA's resolution of Crawford's challenge to Ruffalo's appointment does not present a basis for vacatur of the arbitration award.

Crawford argues that Paragraph 6(a) of the Agreement deprived the arbitrators of any authority to determine the purchase price of Holekamp's shares. As set forth above, however, Paragraph 15 of the Agreement provides that "any controversy or claim that arises out of or in any way relates to this Agreement, including any dispute

about whether any particular controversy is arbitrable . . ., shall be resolved solely by binding arbitration . . . ." The arbitrators arguably applied the terms of the Agreement when they determined that the issue was arbitrable. Although Paragraph 6(a) states that "the Administrator's determination of the Purchase Price shall be final and binding on all parties," it also provides that the Administrator's determination must be in good faith and must follow a certain procedure. The Administrator's determination is thus reviewable under the terms of the Agreement. Paragraph 15 submits nearly all issues to arbitration and may be interpreted to permit the arbitrators to review the Administrator's determination and fashion a remedy if the Administrator has exceeded his limitations with respect to the purchase price. Thus, the case upon which Crawford relies, Katz v. Feinberg, 290 F.3d 95 (2d Cir. 2002), is inapposite, for in that case the agreement explicitly prohibited arbitration or review of any nature whatsoever of the accountants' price determination. We therefore conclude that the arbitrators' resolution of this issue does not present a basis for vacatur of the arbitration award.

Crawford argues that because Holekamp requested the "fair market price" for the stock in his demand for arbitration, the arbitrators' award of more than fair market price for the stock exceeded the scope of the submission to arbitration. The demand also called for "such other relief as [the arbitrators] deem[ed] just and appropriate," however, and we agree with the district court that the award did not exceed the scope of the submission.

Crawford also argues that the arbitrators' determination of the purchase price was irrational and failed to draw its essence from the Agreement because it greatly exceeded the Administrator's determination of the stock's market value and was not based upon the entirety of any single expert's valuation.

Judicial review of an arbitration award is extremely narrow. We may set an award aside only if the contract is not "susceptible of the arbitrator's interpretation."

Hoffman v. Cargill, Inc., 236 F.3d 458, 462 (8th Cir. 2001) (internal quotation omitted). In the absence of a good faith reason to the contrary, the Agreement required the Administrator to "apply valuation principles substantially the same as those which applied to valuing the Award on the Award Date" (which was February 2, 2000). Holekamp submitted evidence that supported his claim that the valuation principles applied by Deloitte & Touche in 2004 differed from those applied by Arthur Andersen in February 2000. Crawford submitted evidence in support of its contention that the principles applied in both instances were essentially the same. In their statement of reasons, Arbitrators Ruffalo and Best found that the Administrator had failed to apply valuation principles substantially the same as those that were applied in valuing Holekamp's shares in February 2000 and that that failure constituted a breach of the Administrator's obligations under Paragraph 6(a) that precluded any determination that the Administrator had acted in good faith.

The conflicting testimony submitted by the parties set forth persuasive arguments in support of their respective positions. It was for the arbitrators to accept those portions of the testimony which they found more persuasive. Whether we as judges would have found that testimony equally as persuasive is beside the point, for we may not set aside an award simply because we might have interpreted the Agreement differently or disagreed with the arbitrators' factual determinations. Id.

In sum, then, we conclude that the arbitrators acted within the scope of their authority in reaching their conclusion and in setting the price of the stock.

The judgment is affirmed.

_____