**Lisa McQUEEN–STARLING,
Petitioner,**

v.

**UNITEDHEALTH GROUP, INC.
and Oxford Health Plans,
Respondents.**

**No. 08 Civ. 4885(JGK).**

United States District Court,
S.D. New York.

March 20, 2009.

Debra L. Raskin, Maia Beth Goodell, Vladeck, Waldman, Elias & Engelhard, P.C., New York, NY, for Petitioner.

Christopher Howard Lowe, James R. Cho, Seyfarth Shaw LLP, New York, NY, for Respondents.

## OPINION AND ORDER

JOHN G. KOELTL, District Judge:

The petitioner, Lisa McQueen–Starling ("McQueen"), filed this petition to vacate an arbitration award entered in favor of the respondents, UnitedHealth Group, Inc. and Oxford Health Plans ("UHG" and "Oxford," respectively; the "Groups," collectively) on her employment discrimination claim.[1] The petitioner originally filed her petition in New York State Supreme Court, New York County, pursuant to Rule 7511 of the New York Civil Procedure Law and Rules (the "CPLR"), but the respondents removed the case to this Court. The petitioner alleges race discrimination in employment in violation of 42 U.S.C. § 1981, the New York Executive Law § 290 et seq. (the "Human Rights Law"), and the Administrative Code of the City of New York § 8–101 et seq. (the "City Law"); and sex discrimination in employment in violation of the Human Rights Law and the City Law.

### I

### A

The following facts are undisputed and taken from the Opinion and Award of the Arbitrator dated January 28, 2008 unless otherwise indicated.[2]

The petitioner, who is an African–American female, was first hired by respondent Oxford on June 19, 2000 as a Human Resources Manager. In that position, she was responsible for providing human resources support for Oxford's New York Sales office, which included a Sales depart-

---

1. The respondents argue that UHG is not a true respondent, and that the correct respondent is United HealthCare Services, Inc. ("UHC"). However, because both parties and the Arbitrator have consistently referred to UHG as one of the respondents, rather than UHC, this Court will also do so.

2. The Arbitrator's Opinion and Award is attached as Exhibit 1 to the Affirmation of Debra L. Raskin ("Raskin Aff.").

ment, an Account Management department, a Small Business department, and a Broker Business unit. These departments and units were all under the supervision of William Golden. Mr. Golden participated in the decision to hire the petitioner. (Arbitrator's Opinion and Award ("Op.") at 1.)

In early 2001, Mr. Golden hired the petitioner a second time, for the position of Manager of the Account Management department. The Account Management department provided education and customer service to clients with existing health insurance accounts at Oxford. The department also supported executives and managers in the Sales department in certain circumstances, and developed relationships with existing group health insurance customers to maintain, renew, and grow accounts. At the time she accepted her new position, the petitioner had no prior experience in insurance, sales, or account management. Although the position had originally been advertised at the Director level, the petitioner was hired at the Manager level, which was lower than the Director level. She received a $10,000 raise in base salary from her previous position as a Human Resources Manager. In her capacity as Manager of the Account Management department, the petitioner managed three Team Leaders, who in turn managed the activities of 20 to 25 Account Managers in the New York City office. In November 2001, the petitioner was assigned to supervise additional support staff. (Op. at 1–2.) On the whole, the petitioner was an effective manager who improved performance in her department. (Op. at 5.)

Mr. Golden supervised the petitioner. Among the other employees supervised by Mr. Golden were two Sales Managers: Paul Marden and Sean Tahany. In or around July 2002, Mr. Marden complained to Human Resources about the petitioner's working style. A Human Resources employee met with Mr. Marden and the petitioner, and the meeting was a success, with no corrective action being taken for either employee. (Op. at 2.)

In March 2003, Mr. Golden promoted Mr. Marden and Mr. Tahany to Director, although without a merit or promotional increase in compensation. The petitioner expressed concern to Mr. Golden that she had not been promoted as well. At the time of the promotions, the heads of the Account Management departments at Oxford's other offices in New Jersey, Connecticut, and Long Island held the title of "Manager." (Op. at 2.)

On March 14, 2003, the petitioner was awarded additional compensation in the form of stock options. She received this and all other additional compensation during her tenure at the recommendation of Mr. Golden. (Op. at 2.)

In April 2003, employees in the petitioner's department complained to Mr. Golden about the petitioner's management style. Mr. Golden held a meeting that included all Account Managers and Human Resources Manager Audrey Julien. Mr. Golden instructed the petitioner that she had to treat the Account Managers with respect and improve the tone of the office. No other corrective action was taken against the petitioner. Following the meeting, members of the petitioner's department seemed to be satisfied with her ongoing management. In 2004, and again in 2005, the petitioner received a raise in her compensation. (Op. at 3.)

In July 2004, Oxford merged with UHG. Because of the merger, Oxford offered retention bonuses to select individuals. The petitioner was one of three employees under Mr. Golden's supervision whom he recommended for a retention bonus, and she received a $20,000 bonus. (Op. at 3.)

After the merger, Mr. Marden and Mr. Tahany had their titles changed from Director to Vice President of New York Sales. The title "Vice President of Sales" was used in the UHG employment structure at the level for which Oxford used the term "Director." The petitioner's base salary was situated in between Mr. Marden's and Mr. Tahany's. (Op. at 3.)

In April 2005, the petitioner assumed responsibility for the Account Management department in the Long Island office, and began working in that office two days a week. In Long Island, the petitioner managed the activities of one additional Team Leader and 11–13 Account Managers. Shortly thereafter, Oxford converted to the UHG system of dividing existing accounts into "Key Accounts" and "Small Business Accounts." At the end of November 2005, Mr. Golden placed the petitioner in charge of the Key Accounts, and Kimberly Santillo was promoted from the position of Team Leader to Manager of Small Business Accounts. On December 1, 2005, Mr. Golden emailed the petitioner and represented to her that he was speaking with Human Resources about promoting her to Director. (Op. at 3.)

In late January 2006, Mr. Golden was directed to eliminate duplicative positions in order to reduce unnecessary layers of management. He identified the petitioner's position as duplicative with that of Jean McGann, a UHG employee of over 20 years holding the position of Regional Director of Major Accounts for New Jersey and New York at the time of the merger. Ms. McGann's title had been changed to Vice-President after the merger. The petitioner's job was the only one identified as duplicative by Mr. Golden. (Op. at 3, 4.)

On March 29, 2006, Mr. Golden and a Human Resources representative informed the petitioner that her job was being eliminated and that she was being laid off. Upon receiving the news, the petitioner asked whether she was being laid off because she was black. Mr. Golden exited the room in response to this question. (Op. at 4.)

In addition to the foregoing undisputed facts found by the Arbitrator, the petitioner alleges a number of disputed facts, many of which she herself testified to at the Arbitration hearing, that form a significant part of the basis for her discrimination claims. Specifically, the petitioner testified to, or elicited testimony about, a number of race- and sex-based comments allegedly made or condoned by her supervisor, Mr. Golden. Mr. Golden denies making the bulk of the comments, and denies that any comments that he did make reflected a discriminatory intent. The alleged comments attributed to Mr. Golden by the petitioner include: remarking to the petitioner that "with looks like that you cannot be 100 percent black" (Tr. at 166); suggesting to the petitioner that her dating standards were too high and asking whether she dated outside her race (Tr. at 147); asking her "yes or no" at an office party (Tr. at 143–44, 420–21); asking whether he would be the only white person at her wedding (Tr. at 149); advising her to hire a female candidate for the Account Manager position because she was "beautiful" (Tr. at 125); commenting that "black men don't do well in sales" (Tr. at 127–28); and complaining that another female employee looked "like a boy" (Tr. at 275).[3] The petitioner also alleges, among other things, that Mr. Golden did nothing to stop jokes among male brokers about female

---

**3.** All citations to the transcript ("Tr. at ___") refer to the transcript of the Arbitration hear-

ing, attached as Raskin Aff. Ex. 2.

colleagues engaging in sexual relations with them (Tr. at 120–21, 526–28), and, in a separate incident, jokes about a "catfight" between the petitioner and Ms. McGann following a PowerPoint presentation making the same joke (Tr. at 546–49).

### B

On April 13, 2006, the petitioner filed a Demand for Arbitration, pursuant to UHG's Employment Arbitration Policy whereby respondents and their employees agreed to resolve employment disputes through internal dispute review ("IDR") and failing that, through arbitration administered by the American Arbitration Association ("AAA"). (Raskin Aff. Ex. 3.) In her Amended Statement of Claim, dated June 7, 2006, the petitioner alleged race discrimination in employment in violation of 42 U.S.C. § 1981, the Human Rights Law, and the City Law; and sex discrimination in employment in violation of the Human Rights Law and the City Law. Pursuant to the Human Rights Law and the City Law, the petitioner also alleged retaliation for her opposition to discriminatory employment practices. (Raskin Aff. Ex. 18.)

The petitioner based these causes of action on alleged events and remarks occurring during her employment with the respondents through her termination. (Raskin Aff. Ex. 18.) The essence of the petitioner's claims was that the respondents discriminated against her by failing to promote her and firing her on the basis of her race and sex, and also in retaliation for her opposition to discriminatory practices. The petitioner's Amended Statement of Claim relied exclusively upon events and remarks occurring during her employment with the respondents and through the termination of that employment.

There were six days of arbitration hearings on the petitioner's claims, beginning on April 24, 2007 and concluding on July 17, 2007. At the hearing and in the post-hearing briefings that followed, in addition to the claims made in her Amended Statement of Claim, the petitioner also claimed that Mr. Golden retaliated against her by refusing to recommend her for another position with UHG after she was fired because she asked, at her termination meeting, whether she was fired based on race.

In an Opinion and Award dated January 28, 2008, the Arbitrator denied all of the petitioner's claims, finding that the petitioner had failed to meet her burden of proof to establish discrimination on the basis of race or sex, or retaliation, with regard to the failure to promote her to the position of Director and the decision to terminate her employment. After outlining the three-part framework for establishing an employment discrimination claim set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973),[4] the Arbitrator indicated that the petitioner had met the initial step of the framework

---

**4.** The Arbitrator correctly identified the three parts of the *McDonnell Douglas* framework: (1) the plaintiff must establish a prima facie case of discrimination; (2) if she does so, the defendant must put forth a legitimate, nondiscriminatory reason for the employer's challenged actions; (3) the burden then shifts back to the plaintiff to demonstrate that the defendant's proffered reason was a pretext for discrimination. *Id.* at 802–04, 93 S.Ct. 1817; see also *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). The *McDonnell Douglas* framework applies to the petitioner's claims under 42 U.S.C. § 1981, the Human Rights Law, and the City Law. *See, e.g., Pacheco v. New York Presbyterian Hosp.*, 593 F.Supp.2d 599, 626 n. 17, 629 n. 18 (S.D.N.Y. 2009).

of making out a prima facie case of discrimination. (Op. at 5–6.) However, the Arbitrator then found that the respondents had put forward legitimate business justifications for not promoting the plaintiff and for terminating the plaintiff's employment, including her lack of experience in the field relative to others who received promotions; complaints about her managerial style; the title held by her colleagues performing analogous duties in other offices; the redundancy of her position with Ms. McGann's; and her relative lack of experience compared to Ms. McGann. (Op. at 6–7.) Proceeding to the third part of the *McDonnell Douglas* analysis, the Arbitrator found that the factual record did not support a finding that the business justifications offered by the respondents for not promoting and eventually firing the petitioner were pretextual. Among other things, the Arbitrator found that the petitioner's reliance on the promotions of Mr. Marden and Mr. Tahany was misplaced because those two employees, who worked in the Sales department, were not "appropriate comparators" to the petitioner; and that the race- and sex-based remarks allegedly made or condoned by Mr. Golden were an insufficient basis to infer that Mr. Golden made employment decisions concerning the petitioner with a discriminatory intent. The Arbitrator noted that the "source and nature of the comments cited, their remoteness in time and the context in which the individual comments were made taken together fail to support a finding of pretext." (Op. at 7–8.) The Arbitrator did not address the claim raised by the petitioner during the hearing and in the post-hearing briefing that Mr. Golden retaliated against her for asking whether she was fired based on race, by not recommending her for another position after the termination of her employment.

The petitioner moves to vacate the arbitration award denying her claims.

## II

■ There is a threshold question concerning the proper standard of review to apply to the Arbitrator's decision. There is no dispute in this case that the Arbitration Agreement is governed by the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* (the "FAA"). The petitioner argues that this appeal should be governed by the standard of review provided in the Arbitration Agreement itself rather than the more restrictive review provision provided in the FAA.

The Arbitration Agreement provided that "the standard of review to be applied . . . will be the same as that applied by an appellate court reviewing the decision of a trial court sitting without a jury." (Raskin Aff. Ex. 3 ¶ 24(b).) The petitioner argues on the basis of this provision that the standard of review applied by the Appellate Division of the New York State Supreme Court to bench trial decisions should be applied here. Under that standard of review, this Court would be "empowered to review questions of law and questions of fact . . . [with] authority [ ] as broad as that of the [Arbitrator] . . . [while] remain[ing] mindful that the [Arbitrator] had the advantage of seeing the witnesses." *New York City Transit Auth. (Estate of Donner) v. City of New York,* 166 A.D.2d 336, 562 N.Y.S.2d 467, 467 (1990); *see also* N.Y. C.P.L.R. § 5501(c).

The respondents argue that the Court must apply the far more deferential standard of review set forth in the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* (the "FAA"). The FAA permits a district court to vacate an arbitration award on four grounds:

(1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a); *see also Stolt–Nielsen SA v. AnimalFeeds Int'l Corp.*, 548 F.3d 85, 90–91 (2d Cir.2008).

▮ The arbitration award may also be vacated under the FAA if it exhibited a "manifest disregard" of the law. *Stolt–Nielsen*, 548 F.3d at 94 (holding that review for manifest disregard of the law is a judicial gloss of grounds articulated in the FAA). Review pursuant to the manifest disregard standard is "severely limited." *India v. Cargill Inc.*, 867 F.2d 130, 133 (2d Cir.1989) (internal quotation marks omitted); *see also Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 389 (2d Cir.2003) (noting that between 1960 and the *Duferco* decision in 2003, the Court of Appeals for the Second Circuit "vacated some part or all of an arbitral award for manifest disregard in ... four out of at least 48 cases where [the Court of Appeals] applied the standard"). "The 'manifest disregard' doctrine allows a reviewing court to vacate an arbitral award only in 'those exceedingly rare instances where some egregious impropriety on the part of the arbitrators is apparent.'" *Stolt–Nielsen*, 548 F.3d at 91–92 (quoting *Duferco*, 333 F.3d at 389).[5] Manifest disregard requires "more than error or misunderstanding with respect to the law," *id.* at 92 (internal quotation marks omitted), and an arbitration award should be enforced "if there is a barely colorable justification for the outcome reached," *Wallace v. Buttar*, 378 F.3d 182, 190 (2d Cir.2004) (internal emphasis and quotation marks omitted).

In *Hall Street Assocs., LLC v. Mattel, Inc.*, 552 U.S. 576, 128 S.Ct. 1396, 170 L.Ed.2d 254 (2008), the Supreme Court addressed the question of whether parties could supplement by contract the statutory grounds for vacating an arbitration award provided in the FAA, including the standard of review established in the statute. The Supreme Court answered this question in the negative. *Id.* at 1400 ("We hold that the statutory grounds are exclusive."). In *Hall Street*, the parties to an arbitration agreement had agreed that a district court could vacate any arbitration award "where the arbitrator's findings of fact are not supported by substantial evidence, or [ ] where the arbitrator's conclusions of law are erroneous." *Id.* at 1400–01. The Supreme Court held that parties could not fortify by contract the deferential standard of review established in the FAA, explaining that the FAA "substantiat[es] a national policy favoring arbitration with just the limited review needed to maintain arbitration's essential virtue of resolving disputes straightaway." *Id.* at 1405.[6]

---

5. In *Stolt–Nielsen*, the Court of Appeals noted that after *Duferco*, under the manifest disregard standard, the Court of Appeals had vacated one award and remanded two awards, and declined to do either in fifteen instances. *Stolt–Nielsen*, 548 F.3d at 92 n. 7.

6. At oral argument, the petitioner suggested that the holding in *Hall Street* with respect to whether parties could supplement by contract the review standard provided in the FAA was not entirely clear, because the Supreme Court remanded the case rather than simply affirm-

The Court of Appeals for the Second Circuit has repeatedly reaffirmed the holding in *Hall Street* in unqualified terms. *See, e.g., In re Am. Express Merchants' Litig.*, 554 F.3d 300, 310 n. 8 (2d Cir.2009) ("[P]arties are not free to compose arbitration agreements which provide for a greater scope of federal court review of arbitral awards than that set forth in the [FAA], because this would be at odds with the FAA's substantiation of a national policy favoring arbitration with just the limited review needed to maintain arbitration's essential virtue of resolving disputes straightaway.") (internal quotation marks and alteration omitted); *Stolt–Nielsen*, 548 F.3d at 93 ("[In *Hall Street*] [t] he Court rejected the parties' attempt to contract around the FAA for expanded judicial review of arbitration awards, concluding that the grounds for vacatur of an arbitration award set forth in the FAA . . . are exclusive.") (internal quotation marks omitted); *Esso Exploration and Prod. Chad, Inc. v. Taylors Int'l Servs., Ltd.*, 293 Fed.Appx. 34, 35 (2d Cir.2008) ("Defendant's argument that the parties contracted for a heightened standard of review is squarely foreclosed by the Supreme Court's recent decision in [*Hall Street*].");  *see also Crawford Group Inc. v. Holekamp*, 543 F.3d 971, 976 (8th Cir.2008) ("An arbitral award may be vacated only for the reasons enumerated in the FAA.").

In arguing that the standard of review agreed to by the parties in the Arbitration Agreement should apply, rather than the standard provided for in the FAA, the petitioner relies upon the following language in *Hall Street:*

In holding that §§ 10 and 11 [of the FAA] provide exclusive regimes for the review provided by the statute, we do not purport to say that they exclude more searching review based on authority outside the statute as well. The FAA is not the only way into court for parties wanting review of arbitration awards: they may contemplate enforcement under state statutory or common law, for example, where judicial review of a different scope is arguable. But here we speak only to the scope of the expeditious judicial review under §§ 9, 10, and 11 [of the FAA], deciding nothing about other possible avenues for judicial enforcement of arbitration awards.

*Hall Street*, 128 S.Ct. at 1406.

The petitioner argues on the basis of this language from *Hall Street* that "parties are free to adopt state rules governing arbitration, even if those rules differ from the FAA." Therefore, the petitioner argues, the Court is not restricted in this case to the deferential standard of review set forth in the FAA.

Although the language cited by the petitioner is suggestive, it is not in itself a

---

ing the reversal of the judgment modifying the arbitration award. *See also Cable Connection, Inc. v. DIRECTV, Inc.*, 44 Cal.4th 1334, 82 Cal.Rptr.3d 229, 190 P.3d 586, 599 (2008). However, the case was remanded on account of "[o]ne unusual feature": the arbitration agreement in *Hall Street* had been entered into by the parties in the course of district court litigation and had been adopted by the district court as an order. *Hall Street*, 128 S.Ct. at 1407. The remand was intended to resolve the resulting question of whether the arbitration agreement should be "treated as an exercise of the District Court's authority to

manage its cases under Federal Rules of Civil Procedure 16," and other derivative questions. *Id.* The issue to be resolved on remand had nothing to do with whether parties could contract to supplement the standard of review provided in the FAA, and there can be no doubt that the Supreme Court held in *Hall Street* that they could not. *See id.* at 1408 (Stevens, J., dissenting) ("Today . . . the Court holds that the FAA . . . forbids enforcement of perfectly reasonable judicial review provisions in arbitration agreements fairly negotiated by the parties . . . .").

sufficient basis for this Court to ignore the plain and unqualified language of the Court of Appeals in interpreting the holding in *Hall Street* to prohibit parties from contracting around the standard of review outlined in the FAA. The petitioner fails to identify a single case in this or any other Circuit holding that the FAA does not apply in federal court where a petition to vacate originated in state court and the parties contracted for a standard of review derived from state law.[7] The petitioner also conceded that the Arbitration Agreement in this case is governed by the FAA. There is persuasive authority in this Circuit that the FAA standard of review applies to a motion to vacate an arbitration award that was originally brought in state court but has been removed to federal court. *See Vail–Ballou Press, Inc. v. Graphic Commc'ns Int'l Union, Int'l Bhd. of Teamsters, Local 898–M*, 480 F.Supp.2d 568, 571 (N.D.N.Y.2007) (applying FAA standard of review where motion to vacate originated in state court but was removed); *Dunhill Franchisees Trust v. Dunhill Staffing Sys.*, 513 F.Supp.2d 23, 26 (S.D.N.Y.2007) (applying FAA standard of review where motion to confirm arbitration award originated in state court but was removed). Therefore, the fact that the petitioner originally brought her petition to vacate in state court does not warrant the application of a state standard of review.

The petitioner attempts to distinguish this persuasive authority by arguing that in this case, unlike in those cases, the parties contracted for a state law standard of review. But if bringing a petition in state court is insufficient to displace the FAA standard of review once the case has been removed to federal court, it is difficult to see how a contractual agreement by the parties to apply a state law standard of review could change the analysis, because contracting around the FAA is precisely the maneuver prohibited by *Hall Street* and the cases in this Circuit interpreting it. Moreover, the petitioner has failed even to show that the parties agreed that a state law standard of review should apply in this case. The language of the Arbitration Agreement plainly does not specify whether a state or federal standard of review is contemplated, as the petitioner conceded at oral argument. (Raskin Aff. Ex. 3 ¶ 24(b).)

The petitioner appears to acknowledge the weakness of the argument that the parties agreed on a state standard of review by arguing in the alternative that the federal standard for appellate review of bench trial decisions should apply instead of the FAA standard of review. But this argument is without merit, because there is no support for the proposition that parties can contract around the FAA standard

---

**7.** At oral argument, the petitioner invoked *Cable Connection, Inc. v. DIRECTV, Inc.*, 44 Cal.4th 1334, 82 Cal.Rptr.3d 229, 190 P.3d 586 (2008). But in *Cable Connection*, which involved state court review of an arbitration award, the California State Supreme Court merely held that "the *Hall Street* holding is restricted to proceedings to review arbitration awards under the FAA, and does not require state law to conform with its limitations." *Id.*, 82 Cal.Rptr.3d 229, 190 P.3d at 599. Thus, *Cable Connection* has no bearing on this case, because it addressed the question of whether after *Hall Street*, a state must con-

form its own standard for reviewing arbitration awards to the FAA standard, while this case concerns the separate question of whether parties to an arbitration agreement that falls within the FAA may contract to compel a federal court to ignore the FAA standard of review and adopt a different standard of review. Indeed, in *Cable Connection* the California Supreme Court explicitly relied on the notion that "the United States Supreme Court does not read the FAA's procedural provisions to apply to state court proceedings." *Id.*, 82 Cal.Rptr.3d 229, 190 P.3d at 597 (internal quotation marks omitted).

of review by choosing an alternative federal standard.

In sum, the petitioner points to no case relying on the cited language in *Hall Street* to apply a non-FAA standard of review to a petition to vacate an arbitration award pending before a federal court, where the agreement is concededly governed by the FAA, even if the petition was originally brought in state court. Therefore, the deferential FAA standard of review applies in this case.

### III

The petitioner advances four main arguments in support of vacating the arbitration award: (1) that her prima facie case of promotion discrimination was not rebutted; (2) that the Arbitrator improperly failed to consider "comparator evidence" in evaluating alleged job redundancy; (3) that the Arbitrator improperly dismissed evidence of bias; and (4) that the Arbitrator did not acknowledge the respondents' effective admission of retaliation. The Court addresses each of these four arguments in turn.

### A

■ The petitioner argues that she made out a prima facie case of promotion discrimination that was not rebutted, and therefore the Arbitrator should have ruled in her favor. However, the premise of this argument is flawed. The respondents rebutted the petitioner's prima facie case of promotion discrimination with a range of business justifications for not promoting the petitioner. These included: complaints about the petitioner lodged by colleagues; complaints about the petitioner lodged by employees who worked under her; and the fact that colleagues with analogous responsibilities in the company's other offices did not hold the title of "Director." (Op. at 2–3.)

The petitioner argues that the complaints cited by the Arbitrator were made and resolved no later than 2003, and thus cannot serve as justification for the respondents' decision not to promote her sometime between 2003 and the termination of her employment in 2006. This argument is without merit. First, the respondents provided evidence, which the Arbitrator credited, that Mr. Golden was taking steps to promote the petitioner toward the end of 2005. (Op. at 3.) In any event, the petitioner provides no legal or factual support for its argument that numerous complaints about an employee in the past cannot justify a decision by the employer to delay promoting that employee for a period of years. The petitioner cites no cases and elicited no testimony that would preclude the Arbitrator from finding that such a delay was reasonable and did not reflect a discriminatory motive.

Moreover, the complaints by colleagues and employees were not the exclusive business justifications advanced by the respondents and credited by the Arbitrator. As discussed above, the Arbitrator also noted that the petitioner's colleagues in Oxford's other offices did not hold the title of "Director." The petitioner argues that this fact could only justify the decision not to promote the petitioner in 2003. But the petitioner points to no evidence that her colleagues in Oxford's other offices were given the title of "Director" in 2004 or 2005, and thus there is no reason why the justification would not continue to be viable after 2003. The petitioner's related argument that the Arbitrator expressly cabined the business justifications based on complaints about the petitioner and the status of the petitioner's colleagues in other offices to the year 2003 is not supported by the Arbitrator's language. The Arbitrator explicitly found that the respondents had put forward legitimate business

justifications for the petitioner's non-promotion "during the relevant time period," not just during 2003. (Op. at 6.)

Thus, the petitioner's argument that an arbitration award in her favor was required because her prima facie case of discrimination was unrebutted is without merit. The respondents provided rebuttal evidence of business justifications for the petitioner's non-promotion from 2003 to 2006, and it was for the Arbitrator to assess and weigh this evidence, which the Arbitrator did. Therefore, the petitioner's first argument does not provide a basis for vacating the Arbitration award.

## B

■ The petitioner's second argument is that the Arbitrator improperly failed to consider "comparator evidence" with respect to determining whether the dismissal of the petitioner was discriminatory. The petitioner argues that the Arbitrator "should have examined the men at [the petitioner's] level who worked for Golden to test his claim that her job was redundant while theirs was not." The gist of the petitioner's argument is that an examination of the positions of three of her white male colleagues at Oxford (which had, by the time of her dismissal, merged with UHG)—Mr. Marden, Mr. Tahany, and Howard Margolies—would have revealed them to be duplicative, thereby belying the proffered explanation for the termination of the petitioner's employment.

This argument is unavailing, because it reflects a misimpression that the Arbitrator was required to make an independent determination with respect to whether the positions held by the petitioner's named colleagues were redundant. The Arbitrator did not need to make such a determination, because she made a factual finding that Mr. Marden and Mr. Tahany were not appropriate comparators to the petitioner.

*See Graham v. Long Island R.R.,* 230 F.3d 34, 39 (2d Cir.2000) ("[T]he plaintiff must show that she was similarly situated in all material respects to the individuals with whom she seeks to compare herself.") (internal quotation marks omitted). The Arbitrator provided multiple bases for this factual finding: Mr. Marden and Mr. Tahany were Sales executives and the petitioner was not; they had spent more time at Oxford than the petitioner; and they had substantial experience in sales and insurance dating back to before they were hired at Oxford, while the petitioner did not. The Arbitrator took into account the partial overlap in functions performed by the petitioner and the putative comparators, but found that the overlap was not sufficiently substantial to consider the petitioner to be similarly situated to the putative comparators. (Op. at 7–8.) These were fact-specific findings that were best left to the sound judgment of the Arbitrator, who had the advantage of seeing and hearing the witnesses. *See Graham,* 230 F.3d at 39 ("Whether two employees are similarly situated ordinarily presents a question of fact for the [fact-finder].").

The petitioner urges that under *Graham,* she must be regarded as similarly situated to her putative comparators if they were subject to the same layoff standard that she was, irrespective of the discrepancies between their employment responsibilities and her own. *See id.* at 40 (looking to whether "the plaintiff and those he maintains were similarly situated were subject to the same workplace standards"). She further urges that there was no explicit finding or record evidence establishing that the putative comparators were not subject to the same dismissal standard as the petitioner. But it was the petitioner's burden to show that she was "similarly situated in all material respects" to her putative comparators, rather than the re-

spondents' burden to prove a negative. *Id.* at 39 (internal quotation marks omitted). Thus, the lack of affirmative evidence in the record that employees performing different functions were evaluated differently provides an insufficient basis to conclude that the petitioner was similarly situated to her putative comparators. Moreover, contrary to the petitioner's representation, the memorandum sent to Mr. Golden and others concerning cost-cutting measures at UHG, including layoffs, can hardly be said to have established a clearly defined, comprehensive layoff standard to be applied mechanically and universally to employees performing different functions. (*See* Raskin Aff. Ex. 10 ¶ 4.) Indeed, the petitioner admitted in her reply brief that the layoff standard to be applied by Mr. Golden was "vague." Thus, it was not manifest disregard of the law for the Arbitrator to find that the petitioner was not similarly situated to her putative comparators.[8]

Therefore, the petitioner's second argument does not provide a basis for vacating the arbitration award.

### C

■ The petitioner's third argument is that the Arbitrator improperly dismissed evidence of bias exhibited by Mr. Golden against the petitioner based on her race and sex. The petitioner relies on a litany of remarks allegedly made by Mr. Golden that purportedly support the petitioner's claim that she was dismissed because of race and sex discrimination. In her Opinion and Award, the Arbitrator expressed skepticism over whether many of these remarks were made, noting, among other things, a lack of documentation. (Op. at 8–9.) She held that even assuming the remarks were made, given their "context," they were insufficiently related in time, content, and source to support the claim that the petitioner was not promoted and was eventually laid off based on race and sex discrimination. (Op. at 7–8.)

It was not manifest disregard of the law for the Arbitrator to find that the alleged remarks by Mr. Golden, if made, did not support the petitioner's discrimination claims. The Arbitrator explained why she found many of these remarks, considered in their context, insufficient evidence of discriminatory intent.[9] For example, the Arbitrator credited Mr. Golden's testimony that any remark he made about black men not doing well in sales concerned the under-representation of African–American men in sales, not the quality of their work. (Op. at 9.) She credited testimony that Mr. Golden once remarked upon the value of hiring a "nice looking" female applicant, but found that this comment was remote from the employment decisions at issue in this case because it occurred in 2001, and that it was not salient background because Mr. Golden had not made any similar comments thereafter. (Op. at 8.) The Arbitrator noted that Mr. Golden had been admonished about that comment by Ms. Julien, a Human Resources Manager, in 2001, and there was no evidence Mr. Golden made a similar comment thereafter. (Op. at 8.) The Arbitrator implied that an alleged comment in 2002 by Mr. Golden to the petitioner that her "standards were too high" was not offensive, based in part

---

8. As the petitioner observes, the Arbitrator did not discuss Mr. Margolies. However, because the petitioner notes in her own brief that Mr. Margolies reported directly to Mr. Tahany and was a member of Mr. Tahany's department, rather than the petitioner's department, there is no reason to believe that it was error for the Arbitrator not to find that the petitioner and Mr. Margolies were similarly situated.

9. The petitioner conceded at oral argument that the Arbitrator was under no obligation to discuss every alleged discriminatory remark.

on the fact that the petitioner never indicated that it was offensive until she initiated this lawsuit. (Op. at 8–9.) Similarly, she did not make a finding that any remarks made by Mr. Golden to the petitioner at an office party in 2002 actually represented a sexual proposition; rather, after hearing the testimony she found only that anything Mr. Golden said to the petitioner during the party which she found offensive was unrelated to the employment decisions at issue in this case. (Op. at 9.) The Arbitrator also found that a Power-Point presentation which allegedly mocked the petitioner and Ms. McGann by intimating that they would engage in a "catfight" was inoffensive in the context it was made—namely, the PowerPoint presentation mocked all employees. (Op. at 9.)

All of these findings by the Arbitrator, made on the basis of the testimony and the credibility of the witnesses, required a fact-intensive inquiry and are beyond the severely limited scope of judicial review under the FAA. *See, e.g., Ganguly v. Charles Schwab & Co.,* No. 03 Civ. 6454, 2004 WL 213016, at *3–*4 (S.D.N.Y. Feb. 4, 2004) (refusing to vacate decision that turned on "fact-intensive issues," including "credibility issues, which are beyond this Court's power to review"). The Arbitrator found that the comments allegedly made by Mr. Golden and others to the petitioner were not indicative of a discriminatory intent in making employment decisions, taking into account the context in which the remarks were made, their remoteness in time from the employment actions at issue, their content, and their sources. Because these findings were fact-intensive and the Arbitrator was better positioned to judge the credibility of the witnesses than this Court, and in light of the deferential standard of review mandated by the FAA, the alleged comments attributed to Mr. Golden and the related comments and events attributed to others do not provide a basis for vacating the arbitration award. In short, the decision with respect to how much weight to give the petitioner's testimony about certain alleged remarks and how much weight to give competing testimony about the same alleged remarks is best left to the sound judgment of the Arbitrator.[10]

## D

■ The petitioner's fourth argument is that the Arbitrator failed to address the petitioner's claim that Mr. Golden retaliated against her by not recommending her for another position after she was fired because at her termination meeting, she asked whether she was fired on the basis of race. The petitioner requests that the case be remanded to the Arbitrator for clarification with respect to this retaliation claim.

---

**10.** In her papers and at oral argument, the petitioner argued that the Arbitrator mistakenly applied the Supreme Court's decision in *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002), in drawing a line between alleged discriminatory remarks made within the statute of limitations period for her claims, and those alleged remarks made outside the statute of limitations period. The petitioner has not brought a hostile work environment claim on the basis of any alleged discriminatory remarks, and she is correct that under *Morgan* any such remarks, whenever made, may be considered in connection with determining whether the respondents acted with discriminatory intent toward the petitioner in failing to promote her and in terminating her employment. *See id.* at 112–13, 122 S.Ct. 2061. But as seen in the foregoing discussion, the Arbitrator plainly considered the alleged discriminatory remarks, whenever made, in precisely this way. Any error made by the Arbitrator in unnecessarily distinguishing alleged remarks made prior to April 13, 2003 as not actionable in themselves, before considering those same remarks in their context as possible evidence of discriminatory intent, falls well short of manifest disregard of the law.

The petitioner's Amended Statement of Claim cabined her retaliation claims to acts and practices of the respondents occurring through the termination of her employment on March 29, 2006. (Raskin Aff. Ex. 18 ¶¶ 18, 37–43.) However, in her opening statement at the hearing, counsel for the petitioner clearly articulated a claim for retaliation based on Mr. Golden's alleged refusal to provide a recommendation for the petitioner based on her question at the termination meeting as to the reason for her dismissal. (*See* Tr. at 17–18.) In addition, during the hearing the petitioner elicited testimony about Mr. Golden's refusal to provide a recommendation based on what transpired at the termination meeting, (*see* Tr. at 861–64), and she reasserted a claim for retaliation based on this refusal in her post-hearing briefing to the Arbitrator. The respondents engaged this retaliation claim on the merits in their own post-hearing briefing to the Arbitrator, and at oral argument the respondents conceded that they would be "hard-pressed" to deny that the claim was fairly before the Arbitrator.

In light of the arguments and the testimony at the hearing, the contents of the parties' post-hearing briefing to the Arbitrator, and the representations made to this Court at oral argument, it is plain that a claim for retaliation based on Mr. Golden's refusal to recommend the petitioner for another position after the termination of her employment was before the Arbitrator. In effect, the claim was tried by the implied consent of the parties, despite the petitioner's failure to raise it in her Amended Statement of Claim. *See* Fed. R.Civ.P. 15(b)(2) ("When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings.").

The respondents concede that a district court may remand an arbitration award to the Arbitrator for further clarification if the award is incomplete or ambiguous. *See, e.g., Rich v. Spartis,* 516 F.3d 75, 83 (2d Cir.2008). However, they contend that the award in this case was not incomplete or ambiguous, because the Arbitrator represented that "Lisa McQueen–Starling's claims of retaliation for opposing discriminatory employment practices ... are denied." (Award of Arbitrator.) This argument is without merit, because there is no indication in the Arbitrator's Opinion that she considered the retaliation claim in question, and every indication to the contrary. In denying the petitioner's retaliation claims, the Arbitrator explained that any complaints about discrimination the petitioner made from 2002 to 2005, and of which Mr. Golden was aware, were not persuasive evidence of retaliation because they were remote in time from the acts of non-promotion and termination of the petitioner's employment. This explanation would make no sense if the Arbitrator were considering the petitioner's claim that Mr. Golden retaliated against her for asking at her termination meeting in 2006 whether she was fired based on race. Moreover, the Arbitrator's analysis of the petitioner's retaliation claims makes no mention of the claim in question. (Op. at 10–11.)

Therefore, pursuant to the petitioner's request, this case should be remanded to the Arbitrator strictly for clarification and decision with respect to the unaddressed retaliation claim. In ordering a remand for clarification, the Court does not require the arbitrator to state her reasons, but only to explain her award with respect to the unaddressed retaliation claim "in a way sufficient to allow effective judicial review." *Rich,* 516 F.3d at 83.

## CONCLUSION

For the reasons explained above, the petition to vacate the arbitration award is

denied except to the extent that the arbitration award disposed of the petitioner's claim that she was the victim of retaliation for asking whether she was fired on the basis of race. With respect to that single retaliation claim, the matter is remanded to the Arbitrator to clarify her ruling.[11] *See Seton Co. v. Lohmann GmbH & Co.,* No. 90 Civ. 1312, 1992 WL 80637, at **7–8 (S.D.N.Y. Apr. 9, 1992) (arbitration award can be remanded in part for clarification).

The Clerk is directed to close Docket No. 1. The Clerk is directed to close this case. Either party may move to reopen this case thirty (30) days after any subsequent decision by the Arbitrator.

**SO ORDERED.**

---

**11.** The Court declines to confirm the arbitration award, because the respondents have not moved for confirmation or moved to dismiss the petition to vacate. *Cf. Sanluis Developments, LLC v. CCP Sanluis, LLC,* 556 F.Supp.2d 329, 332 (S.D.N.Y.2008) ("When a party moves to dismiss a motion to vacate an arbitration award, the court may, sua sponte, treat the motion to dismiss as a motion to confirm the award.").